ACCEPTED
03-15-00446-CV
7820211
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/13/2015 12:45:45 PM
JEFFREY D. KYLE
CLERK

**No. 03-15-00446-CV**

IN THE

THIRD COURT OF APPEALS

AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/13/2015 12:45:45 PM
JEFFREY D. KYLE
Clerk

BAXTER OIL SERVICE, LTD.
Appellant

v.

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY,
Appellee.

Appeal from the 345th Judicial District Court,
Travis County, Texas

**APPELLEE'S BRIEF**

KEN PAXTON
    Attorney General of Texas

CHARLES E. ROY
    First Assistant Attorney
    General

JAMES E. DAVIS
    Deputy Attorney General for
    Civil Litigation

PRISCILLA M. HUBENAK
    Chief, Environmental
    Protection Division

THOMAS H. EDWARDS
    Lead Counsel
    Assistant Attorney General
    Tex. Bar No. 06461800
    Thomas.Edwards@TexasAttorney
    General.gov
        *cont.*

CRAIG J. PRITZLAFF
        Assistant Attorney General
        Tex. Bar No. 24046658
Craig.Pritzlaff@TexasAttorney
General.gov

Office of the Attorney General
Environmental Protection
        Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

ATTORNEYS FOR APPELLEE,
TEXAS COMMISSION ON
ENVIRONMENTAL QUALITY

## IDENTITY OF PARTIES & COUNSEL

*Appellee would supplement Appellant's list of counsel, as follows:*

| PARTY | ATTORNEYS |
|---|---|
| Texas Commission on Environmental Quality | KEN PAXTON<br>    Attorney General of Texas<br><br>CHARLES E. ROY<br>    First Assistant Attorney General<br><br>JAMES E. DAVIS<br>    Deputy Attorney General for Civil Litigation<br><br>PRISCILLA M. HUBENAK<br>    Chief, Environmental Protection Division<br><br>THOMAS H. EDWARDS<br>    Lead Counsel<br>    Assistant Attorney General<br>    Tex. Bar No. 06461800<br>Thomas.Edwards@<br>TexasAttorneyGeneral.gov |

CRAIG J. PRITZLAFF
    Assistant Attorney General
    Tex. Bar No. 24046658
Craig.Pritzlaff@
TexasAttorneyGeneral.gov

Office of the Attorney General
Environmental Protection
    Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . -iii-

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -x-

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -xvii-

STATEMENT ON ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . -xviii-

ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . -xix-

STATEMENT OF FACTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Issue 1:  Under existing precedent, the Order is final, unappealable,
          and immune from collateral attack. (Response to Section II of
          Appellant's Brief.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     A.   The order was final and appealable shortly after it was issued. . . 6

     B.   Baxter received actual notice of the Order. . . . . . . . . . . . . . . . . . 7

     C.   The deadline for appeal has passed and the Order is now
          unappealable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     D.   The statutory deadline is jurisdictional. . . . . . . . . . . . . . . . . . . . 8

     E.   The Order is not subject to collateral attack. . . . . . . . . . . . . . . . 9

F.  Any exceptions that might allow collateral attack do not apply
    here. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Issue 2: Baxter received adequate Due Process. (Response to Sections
    I.C and I.D of Appellant's Brief.). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

A.  The Order is not misleading, provides adequate information
    and is not void. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    1.  The Order provides ample information about the Site
        and the parties involved.. . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    2.  The TCEQ is not required to include appellate advice
        in its orders. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    3.  The Order did not mislead expressly or by
        implication. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

B.  Baxter seeks to expand its rights under the Due Process
    Clause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    1.  The personal service requirement has been met. . . . . . . . . . 18

    2.  The Order meets the three-part balancing test of
        *Mathews v. Eldridge.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        a.  *The first factor—the private interest that will be affected by the
            official action—weighs heavily against Baxter* . . . . . . . . . . . 22

      b.    *The second factor—the risk of erroneous deprivation and probable value, if any, of additional or substitute safeguards–weighs against Baxter* . . . . . . . . . . . . . . . . . . . . . 24

      c.    *The third factor—the public interest—weighs decisively against Baxter.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

  3.    The *Mathews* test has not been universally applied. . . . . . . . . 29

  4.    The *Gonzalez* line of cases is distinguishable.. . . . . . . . . . . . . 30

      a.    <u>*Gonzalez*</u> *involved incorrect notice rather than a lack of notice* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

      b.    *The* <u>*Gonzalez*</u> *precedents are not binding but are "congruent" with Texas law.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

      c.    *In any event, the present case does not fall under the* <u>*Gonzalez/Loudermilk*</u> *precedent.* . . . . . . . . . . . . . . . . . . . . . . . 34

C.  Any Due Process notice violation has been cured by subsequent correct notices. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

D.  The cases that Baxter cites are inapposite. . . . . . . . . . . . . . . . . . . . . 37

  1.    Cases involving the absence of notice, rather than the adequacy of notice, are inapposite. . . . . . . . . . . . . . . . . . . . . . . 38

  2.    Cases involving service at the commencement of an action are inapposite. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

3.    Cases involving significant events during a
      proceeding are inapposite. . . . . . . . . . . . . . . . . . . . . . . . . . . . . [39](#)

4.    Cases involving administrative decisions without an
      appealable final order are irrelevant. . . . . . . . . . . . . . . . . . . . [41](#)

5.    Due Process may enhance statutory notice
      requirements, but the cited cases are inapposite. . . . . . . . . . . [43](#)

Issue 3:  Even if the Order had been issued in violation of Due Process
          it is not void but merely voidable—and it still must be timely
          appealed for the courts to have jurisdiction. (Response to both
          sections of Appellant's Brief.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . [45](#)

A.    Even if the Order was misleading and had been issued in
      violation of Due Process, it was not void; it still had to be
      timely appealed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [45](#)

1.    The courts cannot acquire jurisdiction by mistake or
      accident. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [45](#)

2.    The courts cannot acquire jurisdiction because a
      party did not understand the law.. . . . . . . . . . . . . . . . . . . . . . . [47](#)

3.    The courts cannot gain jurisdiction by consent or
      through estoppel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [47](#)

4.    The Texas rule concerning misleading notice is not
      universally followed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [49](#)

B.    Baxter's cited cases do not support the proposition that the
      Order is void. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [50](#)

1. *Security State Bank and Trust* involved a complete lack of notice rather than incomplete notice. . . . . . . . . . . . . . . . . . . 51

2. *New York Life Insurance* involved service at the wrong address. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

3. *In re Guardianship of B.A.G.* involved a court's lack of personal jurisdiction rather than notice of a right to appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

APPENDIX

-ix-

# INDEX OF AUTHORITIES

## CASES

*Alamo Express, Inc. v. Union City Transfer*, 309 S.W.2d 815 (Tex. 1958).. . . . . [10](#)

*Barrera-Montenegro v. United States*, 74 F.3d 657 (5th Cir. 1996). . . . . . . . . . [38](#)

*Baxter v. Colvin*, 14-CV-01306-WHO, 2014 WL 6985149 (N.D. Cal. Dec. 10, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [49](#)

*Boddie v. Connecticut*, 401 U.S. 371 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . [39](#)

*Bradford v. Edelstein*, 467 F. Supp. 1361 (S.D. Tex. 1979). . . . . . . . . . . . . . . . . [41](#)

*Brooks v. Apfel*, 71 F. Supp. 2d 858 (N.D. Ill. 1999). . . . . . . . . . . . . . . . . . . [32](#), [33](#)

*Browning v. Prostok*, 165 S.W.3d 336 (Tex. 2005).. . . . . . . . . . . . . . . . . . . . . . . [9](#)

*Butland v. Bowen*, 673 F. Supp. 638 (D. Mass. 1987). . . . . . . . . . . . . . . . . . . . [49](#)

*Castillo v. State*, No. 03-11-00503-CV, 2012 WL 3793276 (Tex. App.—Austin Aug. 29, 2012, no pet.) (mem. op.).. . . . . . . . . . . . . . . . . . . . . . . . [10](#)

*Chocolate Bayou Water Co. & Sand Supply v. Tex. Natural Res. Conserv. Comm'n*, 124 S.W.3d 844 (Tex. App.—Austin 2003, pet. denied). . . . [11](#), [17](#)

*Chow v. Dole*, 677 S.W.2d 220 (Tex. App.—Houston [1st Dist.] 1984, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [40](#)

*City of Celina v. Dynavest Joint Venture*, 253 S.W.3d 399 (Tex. App.—
    Austin 2008, no pet.), *rev'd on other grounds*, 392 S.W.3d 88 (Tex.
    2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*City of Dallas v. VSC, LLC*, 347 S.W.3d 231 (Tex. 2011). . . . . . . . . . . . 33, 37, 43

*City of W. Covina v. Perkins*, 525 U.S. 234 (1999). . . . . . . . . . . . . . . . . . . . . . . 42

*City of Waco v. Roddey*, 613 S.W.2d 360 (Tex. App.—Waco 1981, no writ)
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Cleveland Bd. of Educ. v. Donnelly*, 470 U.S. 532 (1985). . . . . . . . . . . . . . . . . 43

*Corzelius v. Harrell*, 186 S.W.2d 961 (Tex. 1945). . . . . . . . . . . . . . . . . . . . . . . 9

*Crawford v. McDonald*, 33 S.W. 325 (Tex. 1895). . . . . . . . . . . . . . . . . . . . . . . 9

*Daniel v. Dallas Indep. Sch. Dist.*, 351 S.W.2d 356 (Tex. Civ. App.—El
    Paso 1961, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Dusenbery v. United States*, 534 U.S. 161 (2002). . . . . . . . . . . . . . . . . . . . . . . 42

*Fed. Commc'ns Comm'n v. Pottsville Broad. Co.*, 309 U.S. 134 (1940). . . . . . . 42

*Fuentes v. Shevin*, 407 U.S. 67 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Goldberg v. Kelly*, 397 U.S. 254 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24

*Gonzalez v. Sullivan*, 914 F.2d 1197 (9th Cir. 1990). . . . . . . . . . . . . . . . . 30-32

*Hayes v. Pin Oak Petroleum, Inc.*, 798 S.W.2d 668 (Tex. App.—Austin
    1990, writ denied) (per curiam). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Hernandez v. Tex. Dep't of Ins.*, 923 S.W.2d 192 (Tex. App.—Austin 1996, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Hess & Clark, Div. of Rhodia, Inc. v. Food & Drug Admin.*, 495 F.2d 975, 983 (D.C. Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Houston v. Fore*, 412 S.W.2d 35 (Tex. 1967). . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*In re Guardianship of B.A.G.*, 794 S.W.2d 510 (Tex. App.—Corpus Christi 1990, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 50, 54, 55

*In re Ruffalo*, 390 U.S. 544 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123 (1951). . . . . . . . . 26

*Jolly v. State*, 856 S.W.2d 859 (Tex. App.—Austin 1993, writ denied). . . . . . 10

*Jones v. Flowers*, 547 U.S. 220 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*L.B.L. Oil Co. v. Int'l Powers Servs., Inc.*, 777 S.W.2d 390 (Tex. 1989) (per curiam). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Langdale v. Villamil*, 813 S.W.2d 187 (Tex. App.—Houston [14th Dist.] 1991, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Lesikar v. Rappeport*, 33 S.W.3d 282 (Tex. App.—Texarkana 2000, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982). . . . . . . . . . . . . . . . . . . 43

*Lopez v. Lopez*, 757 S.W.2d 721 (Tex. 1988) (per curiam). . . . . . . . . . . . . . . . 40

*Loudermilk v. Barnhart,* 290 F.3d 1265 (11th Cir. 2002). . . . . . . . . . . . . . . . . . 32

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . 32

*M.E.K. v. R.L.K.,* 921 So.2d 787 (Fla. Dist. Ct. App. 2006). . . . . . . . . . . . . . . . 29

*Mathews v. Eldridge,* 424 U.S. 319 (1976). . . . . . . . . . . . . . . . . . 19-22, 24, 26, 27

*Medina v. California,* 505 U.S. 437 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Memphis Light, Gas, & Water Div. v. Craft*, 436 U.S. 1 (1978). . . . . . . . . . . . . 41

*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983). . . . . . . . . . . . . . . . 51

*Misium v. Misium,* 902 S.W.2d 195 (Tex. App.—Eastland 1995, writ
    denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Moss v. Malone,* 880 S.W.2d 45 (Tex. App.—Tyler 1994, writ denied). . . . . 40

*Mosser v. Plano Three Venture*, 893 S.W.2d 8 (Tex. App.—Dallas 1994, no
    writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306 (1950). . . . . . . . 18, 19

*N. Alabama Exp., Inc. v. United States,* 585 F.2d 783 (5th Cir. 1978). . . . . . . 42

*Navato v. Sletten,* 560 F.2d 340 (8th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . 42

*New York Life Ins. Co. v. Brown,* 84 F.3d 137 (5th Cir. 1996). . . . 17, 41, 50, 53

*Peralta v. Heights Med. Ctr., Inc.,* 485 U.S. 80 (1988). . . . . . . . . . . . . . . . . . 38, 51

*Petro-Chem. Transp., Inc. v. Carroll*, 514 S.W.2d 240 (Tex. 1974)........... 29

*PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267 (Tex. 2012)................... 52

*Potvin v. Keller*, 313 So.2d 703 (Fla. 1975). ....................... 30

*Pub. Util. Comm'n of Tex. v. Allcomm Long Distance, Inc.*, 902 S.W.2d 662
(Tex. App.—Austin 1995, writ denied)....................... 10

*Rotello v. State*, 492 S.W.2d 347 (Tex. Civ. App.—Houston [1st Dist.]
1973, writ ref'd n.r.e.).................................. 41

*Sec. State Bank & Trust v. Bexar Cnty.*, 397 S.W.3d 715 (Tex. App.—San
Antonio 2012, pet. denied)............................ 17, 50-52

*Sierra Club v. U.S. Nuclear Regulatory Comm'n*, 862 F.2d 222 (9th Cir.
1988). ............................................. 7

*Tex. Alcoholic Beverage Comm'n v. Sfair*, 786 S.W.2d 26 (Tex. App.—San
Antonio 1990, writ denied). .............................. 45

*Tex. Comm'n on Envtl. Quality v. Exxon Mobil Corp., et al.*, No. 03-14-
00667-CV (Tex. App.—Austin 2015). .................... 1, 27

*Tex. Comm'n on Envtl. Quality v. Kelsoe*, 286 S.W.3d 91 (Tex. App.—
Austin 2009, pet. denied)............................... 8

*Tex. Dep't of Transp. v. T. Brown Constructors, Inc.*, 947 S.W.2d 655 (Tex.
App.—Austin 1997, writ denied)......................... 11

*Tex.-N.M. Power Co. v. Tex. Indus. Energy Consumers*, 806 S.W.2d 230
(Tex. 1991). ......................................... 6

*TJFA, L.P. v. Tex. Comm'n on Envtl. Quality*, 368 S.W.3d 727 (Tex. App.—Austin 2012, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Torres v. Shalala*, 48 F.3d 887 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . 34, 35

*Tramco Enters., Inc. v. Indep. Am. Sav. Ass'n*, 739 S.W.2d 944 (Tex. App.—Fort Worth 1987, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Valero S. Tex. Processing Co. v. Starr Cnty. Appraisal Dist.*, 954 S.W.2d 863 (Tex. App.—San Antonio 1997, pet. denied). . . . . . . . . . . . . . . . . . . 44

*Villegas v. Carter*, 711 S.W.2d 624 (Tex. 1986). . . . . . . . . . . . . . . . . . . . . . . . 40

*Walker v. City of Hutchinson, Kan.*, 352 U.S. 112 (1956). . . . . . . . . . . . . . . . . 38

*Walter West, P.E. v. Tex. Comm'n on Envtl. Quality*, 260 S.W.3d 256 (Tex. App.—Austin 2008, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Williams v. Holley*, 653 S.W.2d 639 (Tex. App.—Waco 1983, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293 (Tex. 2001). . . . 48

*Wolff v. McDonnell*, 418 U.S. 539 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

## STATUTES

42 U.S.C. § 405(b)(3)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

42 U.S.C. § 423(d)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Tex. Gov't Code § 311.034. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tex. Health & Safety Code § 361.188.............................. 8, 27

Tex. Health & Safety Code § 361.276.............................. 23

Tex. Health & Safety Code § 361.321.............................. 27, 28

Tex. Health & Safety Code § 361.321(c)............................ 8, 37

Tex. Health & Safety Code § 361.322(a). ........................... 28

Tex. Health & Safety Code § 361.322(a), (g)-(h), (i)-(k)................ 28

Tex. Health & Safety Code § 361.343.............................. 23

Tex. Health & Safety Code §§ 361.181-.188.......................... 24

Tex. Occ. Code § 1101.705(e)................................... 31

Tex. Occ. Code § 1101.706(3)................................... 31

Tex. Water Code § 5.351....................................... 9

**RULES**

Tex. R. App. P. 38.1(g). ....................................... 1

Tex. R. App. P. 39.1.......................................... -xviii-

**ADMINISTRATIVE MATERIALS**

5 J. Stein, G. Mitchell & B. Mezines, *Administrative Law* 48-10 (1988)........ 7

# STATEMENT OF THE CASE

*Appellee would add the following to Appellant's statement:*

The trial court order being appealed from is the Order Granting TCEQ's Plea to the Jurisdiction as to Baxter's Motion for Summary Judgment, CR 1952.

## STATEMENT ON ORAL ARGUMENT

Oral argument would not assist in the determination of this appeal. The dispositive issues have been authoritatively decided and the facts and legal arguments will be adequately presented in the briefs and the record. Tex. R. App. P. 39.1.

If oral argument is granted to Appellant, then Appellee asks to participate.

# ISSUES PRESENTED FOR REVIEW

Issue 1: Under existing precedent, the Order is final, unappealable, and immune from collateral attack. (Response to Section II of Appellant's Brief.)

Issue 2: Baxter received adequate Due Process. (Response to Sections I.C and I.D of Appellant's Brief.)

Issue 3: Even if the Order had been issued in violation of Due Process it is not void but merely voidable—and it still must be timely appealed for the courts to have jurisdiction. (Response to both sections of Appellant's Brief.)

## STATEMENT OF FACTS

The trial court granted the Appellee's Plea to the Jurisdiction and dismissed the Appellant's Motion for Summary Judgment based upon jurisdictional facts, not upon the merits of the case. Appellant offers statements going to the merits of its defense, but these are not "facts pertinent to the issues," within the meaning of Tex. R. App. P. 38.1(g).

Accordingly, Appellee offers the following Statement of Facts:

(The Administrative Record for this case is on a 32 GB flash drive that has previously been provided to this Court in another appeal: *Tex. Comm'n on Envtl. Quality v. Exxon Mobil Corp., et al.*, No. 03-14-00667-CV (Tex. App.—Austin, 2015). Pertinent pages from that record are attached to this brief in the Appendix; they will be cited as AR ___.)

From 1982 to 2008, Appellee the Texas Commission on Environmental Quality ("TCEQ") conducted environmental investigations of a site in Gregg County, Texas, that came to be known as the Voda Petroleum, Inc. State Superfund Site ("Site"). These inspections started when the Site was

1

in operation as a waste oil recycling facility, CR 1191-1201, and continued as Superfund investigations after the Site was abandoned, CR 1201-04, 1215-18. The Appellant, Baxter Oil Service, Ltd. ("Baxter"), was notified of the proposed listing of the Site on the State Registry of Superfund sites, AR 30601-05; of a public meeting and opportunity to comment on the proposed remedy, AR 17912-18, 17945-54; and of the opportunity to fully fund or perform the remedial activities and clean up the Site, AR 33053-64.

The TCEQ issued an administrative order ("Order") concerning the Site on February 12, 2010. CR 1596-1675, 1657. The Order named Baxter as one of the "potentially responsible parties" for the Site. CR 1596-1612, 1598. The Order found that the Site had to be cleaned up and concluded that the potentially responsible parties were "responsible parties" under the law. Order sec. III.A at CR 1616. Following a motion for rehearing, the Order became final by operation of law on April 8, 2010. AR 10.

Copies of the Order were sent to the named parties, including Baxter, by Certified Mail on February 19, 2010. CR 1676-94, 1679. Baxter received

the Order on or about February 26, 2010. CR 1695.

Various parties appealed the Order by filing petitions for judicial review in the district courts of Travis County. Those cases were consolidated into the present case in the 345th Judicial District. CR 221-35. The TCEQ filed a counter-petition and third-party petition seeking cost recovery against the parties named in the Order, including Baxter, and other parties not named in the Order. CR 283-424, 303. Baxter filed an Original Answer, containing general and verified denials. CR 578-81. However, Baxter did not request judicial review of the Order. *Id*. Baxter has never requested judicial review of the Order.

Baxter filed a motion for summary judgment seeking to be dismissed on the grounds that it had not shipped solid waste to the Site and lacked the requisite intent to dispose, and thus was not liable under the law. CR 1458-1581, 1461. The TCEQ filed a plea to the jurisdiction asserting that the Order was final and unappealable as to Baxter and was therefore not subject to collateral attack. CR 1582-1703. Baxter responded that the Order

3

violated Due Process, was void, and could be collaterally attacked. CR

1843-86. The Court granted the TCEQ's plea and dismissed Baxter's motion

for summary judgment. CR 1952. Baxter appealed. CR 1953-55.

## SUMMARY OF THE ARGUMENT

The Order is final and unappealable because Baxter was served with a copy of the Order but has never filed a petition for review, and the statutory waiver of sovereign immunity for the review has expired. Baxter seeks to collaterally attack the Order through a motion for summary judgment, but the District Court lacks jurisdiction to consider that action.

Baxter asserts that the Order violates the Due Process Clause, and is void, because it fails to advise parties of the consequences of the Order and of their right to appeal. However, the Order is detailed and specific, and TCEQ is not required to provide advice to parties about their right to appeal. Any Due Process violation related to lack of notice has been cured because the Order has been served on Baxter several times.

Even if the Order violated Due Process, it is not void but merely voidable. It still must be appealed within the statutory deadlines, if the courts are to have jurisdiction.

# ARGUMENT

## I.

Issue 1: Under existing precedent, the Order is final, unappealable, and immune from collateral attack. (Response to Section II of Appellant's Brief.)

In this case the Appellant seeks to collaterally attack a final administrative order after the statutory deadline for appealing the order has passed. This attack is barred by sovereign immunity. The courts lack jurisdiction to consider such an action except under a specific waiver of sovereign immunity, and that waiver has expired.

### A. The order was final and appealable shortly after it was issued.

The Order became final and appealable when a motion for rehearing was overruled by operation of law on April 8, 2010. *See* AR 10. "Administrative orders are generally final and appealable if 'they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process.'" *Tex.-N.M. Power Co. v. Tex. Indus. Energy Consum-*

6

*ers*, 806 S.W.2d 230, 232 (Tex. 1991), quoting *Sierra Club v. U.S. Nuclear Regulatory Comm'n*, 862 F.2d 222, 224 (9th Cir. 1988). "[C]ourts … should treat as final a decision 'which is definitive, promulgated in a formal manner and one with which the agency expects compliance.'" *Tex.-N.M. Power Co., id.*, quoting 5 J. Stein, G. Mitchell & B. Mezines, *Administrative Law* 48-10 (1988). This Order meets those criteria. It was timely appealed by many parties in this case, as shown by the papers on file herein, and its appealability at that time has not been disputed.

## B. Baxter received actual notice of the Order.

Baxter received a copy of the Order by certified mail shortly after it was issued. CR 1695. Thus, Baxter was notified both of the contents of the Order and the fact that it had been issued. Precedents involving lack of service, inadequate service, or lack of capacity to be served are irrelevant to the current case because Baxter had both notice and capacity.

## C. The deadline for appeal has passed and the Order is now unappealable.

The deadline for filing an appeal of a Superfund order issued under

Tex. Health & Safety Code § 361.188 is "the 30th day after the date of the ruling, order, decision, or other act of the governmental entity whose action is appealed," *id*. § 361.321(c). [1] That deadline has long since passed. Accordingly, the Order is final and unappealable as to Baxter, and all its findings and conclusions are binding upon Baxter as a matter of law.

### D. The statutory deadline is jurisdictional.

The courts lack jurisdiction to consider a late-filed petition for judicial review of an administrative order. *Tex. Comm'n on Envtl. Quality v. Kelsoe,* 286 S.W.3d 91, 97 (Tex. App.—Austin 2009, pet. denied) (petition for judicial review filed after statutory deadline "was untimely and did not invoke the trial court's jurisdiction over any of [the petitioner's] complaints.") (citations omitted). *Accord, TJFA, L.P. v. Tex. Comm'n on Envtl. Quality*, 368 S.W.3d 727, 736 (Tex. App.—Austin 2012, pet. denied). *See also, Walter West, P.E. v. Tex. Comm'n on Envtl. Quality*, 260 S.W.3d 256, 263 (Tex.

---

[1] The correct section of the Health and Safety Code under which this Order should be appealed is an issue currently under consideration by this Court. *See infra* notes 2-3 and accompanying text. However, under either possible section, the deadline has passed.

App.—Austin 2008, pet. denied) (petitions for judicial review of TCEQ decision, not filed within 30-day deadline under Tex. Water Code § 5.351, were untimely and this failure "deprived the trial court of jurisdiction to consider appellants' petitions for judicial review.") (citations omitted). *See also* Tex. Gov't Code § 311.034 ("Statutory prerequisites to a suit … are jurisdictional requirements in all suits against a governmental entity.").

## E. The Order is not subject to collateral attack.

Baxter's motion for summary judgment constitutes a collateral attack on the Order. *See Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005) ("A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against."), citing *Crawford v. McDonald*, 33 S.W. 325, 327 (Tex. 1895) (other citations omitted).

An administrative order that is regular on its face is not subject to collateral attack. *See Corzelius v. Harrell*, 186 S.W.2d 961, 967 (Tex. 1945) and

9

cases cited therein. *See also Pub. Util. Comm'n of Tex. v. Allcomm Long Distance, Inc.*, 902 S.W.2d 662, 666 (Tex. App.—Austin 1995, writ denied) ("Generally, an agency's final order, like the final judgment of a court of law, is immune from collateral attack."), citing *Alamo Express, Inc. v. Union City Transfer*, 309 S.W.2d 815, 827 (Tex. 1958) (concluding that collateral attack on Railroad Commission order was impermissible because administrative statutes provided sole method of attack). *See also, Castillo v. State*, No. 03-11-00503-CV, 2012 WL 3793276 at *4 (Tex. App.—Austin Aug. 29, 2012, no pet.) (mem. op.) ("A final order of the [agency] that is valid on its face is not subject to collateral attack in a subsequent enforcement proceeding."), quoting *Jolly v. State*, 856 S.W.2d 859, 861 (Tex. App.—Austin 1993, writ denied).

## F. Any exceptions that might allow collateral attack do not apply here.

The exceptions to the no-collateral attack rule are very limited. None apply here. *See Allcomm Long Distance, Inc.*, 902 S.W.2d at 666 (noting a well-recognized exception to the no-collateral attack rule when an agency

acts beyond the scope of its statutorily conferred powers); *Tex. Dep't of Transp. v. T. Brown Constructors, Inc.*, 947 S.W.2d 655, 659 (Tex. App.—Austin 1997, writ denied) (collateral attack is allowed only when the judgment was void or involved fundamental error). Absent those exceptions, the courts lack jurisdiction to consider a collateral attack on an administrative order that is final and unappealable as to that party. *See City of Celina v. Dynavest Joint Venture*, 253 S.W.3d 399, 403 (Tex. App.—Austin 2008, no pet.), *rev'd on other grounds, Rusk State Hosp. v. Black*, 392 S.W.3d 88 (Tex. 2012) ("Although courts generally do not have jurisdiction to consider collateral attacks on state agency decisions, a collateral attack upon an agency order may be maintained successfully if the order is void."), citing *Chocolate Bayou Water Co. & Sand Supply v. Tex. Natural Res. Conserv. Comm'n*, 124 S.W.3d 844, 853 (Tex. App.—Austin 2003, pet. denied).

Issue 2: Baxter received adequate Due Process. (Response to Sections

I.C and I.D of Appellant's Brief.)

**A. The Order is not misleading, provides adequate information and is not void.**

    **1. The Order provides ample information about the Site and the parties involved.**

Baxter suggests that the Order was vague or illogical, but those assertions are not well-founded. For example, Baxter asserts that, "Except for the fact that Baxter was on the Order's mailing list, nothing in the TCEQ's Order provides any information linking Baxter to the Voda Site." Appellant's Br. 22. To the contrary, the Order names Baxter as a "potentially responsible party," CR 1598; describes the actions or statuses that led to that categorization, CR 1612-13; lists and describes the "Chemicals of Concern" found at the Site, CR 1615, 1668-69; and concludes that the potentially responsible parties are "responsible parties," CR 1616. Baxter already knew, or could readily find out, what materials it had shipped to

the Site. *See, e.g.*, CR 1478-1568.

Baxter also asserts that "without any supporting finding of fact or analysis, all of the potentially responsible parties are suddenly and automatically transformed into 'responsible parties' by Conclusion of Law and Determination III.A on page 25 of the Order. CR 1757." Appellant's Br. 23. This grossly misstates the contents of the Order, which contains 20 pages of findings of fact, CR 1596-1616, and twelve conclusions of law, CR 1616-17. Baxter may disagree with the findings and conclusions, but cannot say that there are none.

Finally, Baxter asserts that the Order "did not provide Baxter sufficient information of a potential deprivation of its property." Appellant's Br. 23. To the contrary, the Order required Baxter and others to reimbuse the TCEQ's costs, CR 1621, perform remedial work, CR 1622, and carry out other specific and detailed activities, CR 1622-48. The Order certainly provided notice that the named parties were being asked to pay money and perform work.

### 2. The TCEQ is not required to include appellate advice in its orders.

Baxter asserts that the Order "did not provide Baxter with notice of the right to appeal the Order and in fact was misleading on this point ... [and] did not provide Baxter with any information about the extent of the property deprivation." Appellant's Br. 15. To the contrary, the Order was not misleading about Baxter's right to appeal. Baxter admits: "nothing in the 62–page Order itself even hints that a PRP has any right to be heard in a challenge to the Order." Appellant's Br. 16, citing CR 1733-94. In other words, the Order was not misleading because the TCEQ provided no information at all about administrative appeals—nor was it required to.

The Order is a final decision of the TCEQ. It represents the culmination of a lengthy and complicated investigation and remedy selection process. The TCEQ is required to embody within the document only what it has determined and decided.

Baxter's argument is that the agency should have given information about whether and how to appeal, and its failure to do so was misleading.

14

Appellant's Br. 16 ("[T]he Order is misleading in that it creates the impression that no right to appeal exists."). Baxter points to language in Sec. XXXII of the Order, CR 1792, saying "this would have been one logical place to provide some notice to PRPs of the right to challenge the Order." Appellant's Br. 16-17. However, that argument assumes that the TCEQ had an obligation to provide advice concerning a party's right to appeal in the Order. This argument must fail because the agency has no such obligation.

### 3. The Order did not mislead expressly or by implication.

Baxter refers to the language of Sec. XXXII as being an "express denial of any 'right to seek review' of the Order." Appellant's Br. 17, quoting sec. XXXII of the Order. However, that section merely says, "The conference … does not give Agreeing Respondents or … Performing Parties the right to seek review of this AO." CR 1792. A fair reading of this section is that the conference itself does not provide a right of appeal—not that the right to appeal is nonexistent. In any case, the record does not reflect that Baxter was misled into requesting a conference, and Baxter does not claim that it

15

was, so the issue is moot.

Similarly, Baxter asserts that Section XXXV misleads by saying, "nothing in this AO waives the State of Texas' sovereign immunity relating to suit, liability, and the payment of damages." Appellant's Br. 17, quoting sec. XXXV, CR 1793. This would not be misleading to a lay person, because a lay person would not understand that the statutory right to appeal such administrative order actually constitutes a waiver of the State's sovereign immunity. Likewise, this language would not be misleading to an attorney, because the attorney would know (perhaps after some research) that the statute contains a specific section providing for appeal of the Order. Tex. Health & Safety Code § 361.321. This argument by Baxter must fail.

There is no "express denial" of a right to appeal in this Order. Baxter's argument that the Order is "affirmatively misleading" about the right to appeal is spurious.

B. **Baxter seeks to expand its rights under the Due Process Clause.**

Baxter does not dispute that it was notified of the progress of the

16

Superfund investigation, or that it was served with a copy of the Order when issued, or that the deadline for appeal has passed. Baxter does not dispute that, under existing precedents, the Order is final, unappealable and immune from collateral attack. Instead, Baxter asserts that the Order was void because it did not contain adequate notice. In making this argument, Baxter seeks to expand the scope of protection offered by the Due Process Clause. The crux of that argument is contained in a footnote to Appellant's Brief:

> Baxter recognizes that some cases have described only two circumstances under which administrative orders are void in a manner that subjects them to collateral attack – when an agency exceeds its authority or when an order is procured by extrinsic fraud. *See Chocolate Bayou Water Co. & Sand Supply v. Tex. Natural Res. Conserv. Comm'n*, 124 S.W.3d 844, 853 (Tex. App.—Austin 2003, pet. denied); *Lesikar v. Rappeport*, 33 S.W.3d 282, 613 (Tex. App.—Texarkana 2000, no pet.). Those cases did not involve orders entered without adequate notice and thus the courts had no opportunity to consider the implications of an order entered in violation of due process. Orders that fail to comply with due process are void. *See Security State Bank & Trust*, 397 S.W.3d at 723; *see also N.Y. Life Ins. Co.*, 84 F.3d at 143; *In re Guardianship of B.A.G.*, 794 S.W.2d at 513. The types of void orders subject to collateral attack should thus include constitutionally infirm orders.

17

Appellant's Br. 28 n.5. In other words, Baxter cites no authority for the proposition that this Order, or any order issued and served such as this, is void for violating Due Process. Instead, Baxter is asking for an expansion of its Due Process rights to provide special relief in this case.

Baxter describes this new constitutional right as the right to be notified that an administrative order "could be appealed or the consequences of not appealing," Appellant's Br. 15; or the right to receive "adequate notice of the right to be heard," or "adequate notice of the issues or consequences," *id*. at 22, concerning such orders. However, the constitutional precedents are decidedly against this proposition.

## 1. The personal service requirement has been met.

In discussing the adequacy of notice, Baxter relies upon *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 318 (1950) (service by publication regarding settlement of trust funds, held inadequate to give notice to "known present beneficiaries of known place of residence"). Notice by publication may be inadequate, and thus violate Due Process, if personal

service is readily available. *Id*. at 318-19.

As noted above, Baxter received personal service. CR 1676-95. While *Mullane* speaks generally to the importance of notice and opportunity to be heard, and may not be strictly applicable here, in any case its requirement of personal service has been met.

## 2. The Order meets the three-part balancing test of *Mathews v. Eldridge*

Baxter's principal argument is that these rights exist, or should exist, under the precedent established by *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* Appellant's Br. sec. I.D at 24-27. Baxter cites *Mathews* both for general principles of Due Process and specifically for the Supreme Court's balancing test regarding notice and opportunity to be heard. Appellant's Br. 14, 24, *passim*. However, applying the *Mathews* test to the facts of this case reveals that Baxter's Due Process rights were not violated.

*Mathews* concerned a recipient of Social Security disability benefits (Eldridge), whose benefits were terminated when the agency determined that he was no longer disabled. *Mathews*, 424 U.S. at 324. The Supreme

19

Court characterized the issue as follows: "whether the Due Process Clause of the Fifth Amendment requires that prior to the termination of Social Security disability benefit payments the recipient be afforded an opportunity for an evidentiary hearing." *Id*. at 323.

The agency's procedures included the gathering of medical information, communication with the disabled worker in writing and orally, and examination by an independent consulting physician. *Id*. at 337. The worker was entitled to respond with additional evidence, *id*. at 338; to request reconsideration; and to have a non-adversarial hearing, with counsel, before an administrative law judge. *Id*. at 339.

The Court found that, even though the agency's procedures did not include the right to an evidentiary hearing prior to termination, they nevertheless met the requirements of Due Process. *Id*. at 339-40.

In *Mathews* the Supreme Court said, "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process

Clause of the Fifth or Fourteenth Amendment." *Id*. at 332. "[S]ome form of

hearing is required before an individual is finally deprived of a property

interest." *Id*. at 333. However, the actual form of hearing varies from

informal administrative procedures to "a hearing closely approximating a

judicial trial," *id*., citing *Goldberg v. Kelly*, 397 U.S. 254, 266-71 (1970).

Noting that the requirements of Due Process are not fixed, the Court

enunciated a balancing test involving three factors:

> [I]dentification of the specific dictates of due process generally
> requires consideration of three distinct factors: First, the private
> interest that will be affected by the official action; second, the risk
> of an erroneous deprivation of such interest through the proce-
> dures used, and the probable value, if any, of additional or substi-
> tute procedural safeguards; and finally, the Government's interest,
> including the function involved and the fiscal and administrative
> burdens that the additional or substitute procedural requirement
> would entail.

*Id*. at 335. The Court used this balancing test to distinguish *Mathews* from

*Goldberg v. Kelly*, which had previously held that a person's welfare bene-

fits could not be terminated without an evidentiary hearing prior to

termination. *See Goldberg*, 397 U.S. at 266-71. Baxter asserts that this balanc-

ing test, applied to the present case, shows that Baxter's Due Process rights were violated. However, an application of that test to the facts of this case shows the opposite.

> a. *The first factor—the private interest that will be affected by the official action—weighs heavily against Baxter*

The Supreme Court looked, in the two cases, at the deprivation that could affect individuals if benefits were denied. The *Mathews* termination differed from *Goldberg v. Kelly* in that "[e]ligibility for disability benefits, in contrast [to welfare benefits], is not based upon financial need." *Mathews*, 424 U.S. at 340. Thus, "[t]he potential deprivation here is generally likely to be less than in Goldberg." *Id*. at 341. Although the disabled worker could suffer an interim loss awaiting a final decision, the worker might have other sources of income. *Id*. at 342-43.

In the present case, Baxter will suffer no comparable deprivation from its failure to timely appeal the Order—indeed, Baxter has not yet suffered any loss of liberty or property at all. What Baxter has lost is a legal position. Essentially, Baxter is now a co-defendant, along with other companies

22

like Shell and Exxon Mobil, in a Superfund cost recovery action. *See* CR 1924-34. The other companies timely appealed; Baxter did not. The findings and conclusions in the Order are established as a matter of law as to Baxter, but not as to the other defendants. Baxter is currently at a disadvantage in trial preparation or settlement negotiations, but the case is not over. The finder of fact must still allocate costs among the remaining parties. *See* Tex. Health & Safety Code §§ 361.343, .276. Only then can a final money judgment be assessed.

Even if the other parties managed to escape liability altogether, and Baxter were the "last man standing," Baxter's deprivation could not compare to the loss of welfare benefits in *Goldberg,* which might have resulted in actual physical hardship, or in *Mathews* to the loss of Social Security benefits to a disabled worker who might (or might not) have other sources of income.

Baxter has lost a legal position in an ongoing lawsuit, but has not lost a liberty or property interest. As to the first factor, the *Mathews* balancing test

weighs heavily against Baxter.

> b. *The second factor—the risk of erroneous deprivation and probable value, if any, of additional or substitute safeguards–weighs against Baxter*

Secondly, the Supreme Court examined the nature of the inquiry and the information required in each case. In *Mathews*, the relevant inquiry depended on "medically acceptable clinical and laboratory diagnostic techniques," *Mathews*, 424 U.S. at 343, citing 42 U.S.C. § 423(d)(3), whereas in *Goldberg*, "written submissions are a wholly unsatisfactory basis for decision." *Mathews*, 424 U.S. at 344, citing *Goldberg*, 397 U.S. at 269. The Court concluded that in *Mathews*, "[t]he potential value of an evidentiary hearing, or even oral presentation to the decisionmaker, is substantially less in this context than in Goldberg." *Mathews*, 424 U.S. at 344-45.

The current case is much closer to *Mathews* than to *Goldberg*. The TCEQ is required to go through exhaustive procedures to establish the facts in support of a Superfund order. *See* Tex. Health & Safety Code §§ 361.181-.188. (For a description of what the TCEQ actually did to investigate the

24

Site, identify potentially responsible parties, select the remedy and prepare the Order, *see* TCEQ's Motion for Partial Summ. J., sec. III.C at CR 1190-1233.) These procedures are designed to ensure that persons responsible for solid waste or hazardous substances at a Superfund site are properly identified, that they are aware of the procedure and have an opportunity to be heard, and that they have a right to petition the courts for judicial review when the order is issued. Nothing about this Order indicates that the TCEQ failed to follow the proper statutory procedures, or otherwise deprived anyone of their Due Process rights.

There would be little value, if any, in "additional or substitute procedural safeguards." Most of the viable parties named in the Order filed timely appeals. CR 221-35. What Baxter wants is to make the Order once again appealable so it can argue the merits. The only additional "safeguard" at this point would be to re-open the District Court's jurisdiction after the statute has extinguished it. While such an action would benefit Baxter in this one case, it would create uncertainty as to the finality of

25

judgments and be destructive of judicial procedure overall.

Thus, as to the second factor, this case is closer to *Mathews* than to *Goldberg* because it depends on documentary and scientific evidence, and the procedures allow for input by the parties and the correction of errors. There would be little value in additional or substitute safeguards, and positive harm to the judicial process if Baxter were allowed to appeal at this late date. The second factor weighs against Baxter.

### c. *The third factor—the public interest—weighs decisively against Baxter*

The Supreme Court then said, "In striking the appropriate due process balance the final factor to be assessed is the public interest." *Mathews*, 424 U.S. at 347. "[T]he Government's interest, and hence that of the public, in conserving scarce fiscal and administrative resources is a factor that must be weighed." *Id*. at 348. "The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Id*. at 348-49, quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 171-72 (1951). In the circumstances

of *Mathews*, however, the Court said, "[w]e conclude that an evidentiary hearing is not required prior to the termination of disability benefits and that the present administrative procedures fully comport with due process." *Mathews*, 424 U.S. at 349.

Baxter suggests that the TCEQ's burden of providing additional notice would be "minuscule." Appellant's Br. 26. However, that notice would actually be a form of legal advice, and it would not be simple in cases such as this. Ironically, Baxter's proposed notice (Appellant's Br. 26) contains a series of problematic statements and outright errors, as follows:

- "Those costs could exceed $_____" — *Problematic*, since TCEQ cannot know the final costs at the time of such a Superfund order (when the remedial action has not started), and even a carefully-selected remedial action plan (*see, e.g.,* CR 1659-67) cannot ensure against unexpected contingencies.

- "Pursuant to section 361.321 and/or 361.322 of the Texas Health and Safety Code, you have the right to appeal this Order" — *Not sound advice*, since the proper section is currently an issue on appeal in this court. *See Tex. Comm'n on Envtl. Quality v. Exxon Mobil Corp.*, No. 03-14-00667-CV (Tex. App.—Austin). (The TCEQ's position is that this Order was issued under Tex. Health & Safety Code § 361.188 and the appeal can be taken only under *id.* § 361.321.)

- "Your appeal <u>must</u> be filed with the TCEQ" — *Wrong*; the petition for review must be filed in the district court of Travis County. Tex. Health & Safety Code § 361.321(a). [2]

- "… within 30 days of the date of this Order" — *Correct*, assuming that the appeal is brought under Section 361.321. [3]

- "Failure to file an appeal will adversely affect your right to challenge this Order" — *Understated*, since the order would actually become final and unappealable.

Thus, the legal advice that Baxter would have the TCEQ give would not be simple or easy; it would be burdensome to the agency and problematic to those receiving it, and might create Due Process problems in itself. The same could be true of practically any legal advice an agency might offer to a person named in an administrative order.

Finally, it must be noted that a right to be advised of the appealability of final administrative orders, if it existed at a constitutional level, would also necessarily apply to court orders and judgments. This would greatly

---

[2] Even if the petition for review is filed pursuant to Section 361.322, it still must be filed in the district court. Tex. Health & Safety Code § 361.322(a), (g)-(h), (i)-(k).

[3] However, if the appeal is under Section 361.322, then the petition can be filed "before the 46th day after the date of receipt, hand delivery, or publication service of the order." Tex. Health & Safety Code § 361.322(a).

disturb the public interest in the finality of judgments. *See Petro-Chem. Transp., Inc. v. Carroll*, 514 S.W.2d 240, 246 (Tex. 1974) ("[F]inal judgments should not be disturbed unless there is good reason for doing so.")

The third factor weighs decisively against Baxter.

### 3. The *Mathews* test has not been universally applied

The *Mathews* test has not been universally applied to all Due Process challenges. The Supreme Court has abrogated its holding with respect to state rules of criminal procedure. *See Medina v. California*, 505 U.S. 437, 443 (1992) ("In our view, the *Mathews* balancing test does not provide the appropriate framework for assessing the validity of state procedural rules which, like the one at bar, are part of the criminal process."). Courts have applied other factors concerning right to counsel in parent-child relation-ship cases. *See, e.g.*, *M.E.K. v. R.L.K.*, 921 So.2d 787, 791 (Fla. Dist. Ct. App. 2006) ("[I]in the context of determining whether a right to appointed counsel exists in a case involving the parent-child relationship, Florida courts must weigh the factors enunciated in [*Potvin v. Keller*], not

*Mathews*."), citing *Potvin v. Keller*, 313 So.2d 703 (Fla. 1975).

### 4.   The *Gonzalez* line of cases is distinguishable.

*a.   Gonzalez involved incorrect notice rather than a lack of notice.*

None of Baxter's cited cases supports the proposition that Due Process requires an agency to advise a party that a final administrative order may be appealed. The case that comes closest to being on point, but is distinguishable, is *Gonzalez v. Sullivan*, 914 F.2d 1197 (9th Cir. 1990). Gonzalez filed for Social Security disability benefits. *Id*. at 1200. The Secretary of the Department of Health and Human Services denied the application, and Gonzalez reapplied. *Id*. An administrative law judge conducted a hearing and denied the application. *Id*. Gonzalez appealed to the district court and then to the U.S. Court of Appeals for the Ninth Circuit. *Id*. As part of the appeal, the Court examined whether the notice of adverse decision met the requirements of Due Process.

The notice contained the following language: "If you do not request reconsideration of your case within the prescribed time period, you still

have the right to file another application at any time." *Id*. at 1203. The

Court concluded that, "The notice given in this case does not clearly

indicate that if no request for reconsideration is made, the determination is

final. We conclude that the notice violates appellant's fifth amendment

right to due process." *Id*.

In *Gonzalez*, the agency was required by statute to give notice concern-

ing the right to reapply or appeal. The Social Security Act says:

> In any notice of an adverse determination with respect to which a
> review may be requested … , the Commissioner of Social Security
> shall describe in clear and specific language the effect on possible
> entitlement to benefits under this subchapter of choosing to reap-
> ply in lieu of requesting review of the determination.

42 U.S.C. § 405(b)(3)(B) (citation omitted).[4]

The federal circuit courts are unanimous in finding that this notice in

the Social Security form letter is defective and gives rise to Due Process

issues. Most circuits, however, find that there is a second part to the

---

[4] Some Texas statutes also require notice of the right to appeal specific administra-
tive orders. For example, notice of certain orders of the Texas Real Estate Commission
must include notice of "the person's right to judicial review of the order." Tex. Occ.
Code §§ 1101.705(e), 1101.706(3). There is no such requirement in the present case.

analysis: "whether the defective notice violates the claimant's procedural due process rights." *Loudermilk v. Barnhart,* 290 F.3d 1265, 1269 (11th Cir. 2002). That issue involves the question of detrimental reliance. In reviewing *Gonzalez,* the *Loudermilk* court explained:

> In *Lujan v. Defenders of Wildlife,* the Supreme Court held there must be a causal connection between the injury and the complained of conduct.… All the circuit courts considering the Social Security determination notice issue, with the exception of the Ninth Circuit, require a causal connection, following the Supreme Court's dictate in *Lujan.* In implementing this requirement, the courts hold the claimant must have detrimentally relied upon the notice.… We find the reasoning and, therefore, the test employed by the majority of the circuits more persuasive in light of the teachings of *Lujan.*

*Loudermilk,* 290 F.3d at 1269, citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) (other citations omitted). Thus, the federal circuit courts all agree that the notice was defective; the Ninth Circuit is in the minority in not requiring detrimental reliance.

A claimant may negate detrimental reliance by abandoning the claim. *See, e.g., Brooks v. Apfel,* 71 F. Supp. 2d 858, 862 (N.D. Ill. 1999), citing *Gonzalez,* 914 F.2d at 1203 (holding that a similar applicant had abandoned

32

his claim after five years). "It is reasonable to conclude that such a gap between filings suggests abandonment, not confusion." *Brooks,* 71 F. Supp. 2d at 863.

> b. *The <u>Gonzalez</u> precedents are not binding but are "congruent" with Texas law.*

The specific rulings of the federal courts in the *Gonzalez/Loudermilk* line of cases, analyzing the specific language of a Social Security form letter, are not binding on Texas courts. "Decisions of the federal courts of appeals, of course, do not bind Texas courts although they are received with respectful consideration." *Hayes v. Pin Oak Petroleum, Inc.*, 798 S.W.2d 668, 672 n.5 (Tex. App.—Austin 1990, writ denied) (per curiam) (citations omitted). However, the Texas Supreme Court has referred to federal and state constitutional provisions as "congruent." *City of Dallas v. VSC, LLC,* 347 S.W.3d 231, 234 n.3 (Tex. 2011) (citation omitted) ("Where the parties have not argued that there are any material differences between the state and federal versions of a constitutional provision, we typically treat the two clauses as congruent.")

c.  *In any event, the present case does not fall under the* <u>*Gonza-*</u>
    <u>*lez/Loudermilk*</u> *precedent.*

The *Gonzalez/Loudermilk* line of cases are tangential to the present case:

they hold that, if an agency gives advice concerning the right to appeal an

administrative decision, that advice must be correct. If an affected party

relies upon that advice to the party's detriment, and a significant property

right is affected, procedural Due Process may have been denied. However,

while *Gonzalez* and *Loudermilk* are tangentially relevant, the present case

does not actually meet either prong of their Due Process analysis—neither

incorrect advice nor detrimental reliance. The TCEQ did not offer any

advice concerning a party's right to appeal the Order, so Baxter could not

have relied upon such advice.

C.  **Any Due Process notice violation has been cured by subse-
    quent correct notices.**

An agency may correct an incorrect notice and avoid a potential Due

Process issue. *See, e.g., Torres v. Shalala*, 48 F.3d 887 (5th Cir. 1995) (appli-

cant received the same incorrect notice twice, but then continued reapply-

34

ing and subsequently received a correct notice). In *Torres*, the Fifth Circuit said, "Appellant has not shown any causal connection between the allegedly misleading language in the first two notices and his subsequent failure to seek judicial review. Appellant continued to appeal his denial of benefits, and did not stop until he reached the end of the administrative process." *Id.* at 893.

A party who was unaware of an administrative proceeding may still face a deadline for timely judicial review when later notified of the administrative order. *See, e.g., Bedell v. State*, No. 03-11-00502-CV, 2013 WL 2631738 (Tex. App.—Austin, June 5, 2013), review denied (Sept. 27, 2013) (mem. op.). The Texas Railroad Commission issued an order requiring Bedell to plug certain oil and gas wells and pay a penalty. *Id*. at *1. Bedell failed to comply; the agency brought suit in district court. *Id*. Bedell filed defensive pleadings and a counterclaim; the state filed a motion for summary judgment and a plea to the jurisdiction "urging that the trial court lacked jurisdiction over the counterclaim because Bedell had not demon-

strated that the State had waived sovereign immunity … ." *Id*. On appeal, the state contended that, even if Bedell had no contemporaneous notice of the administrative proceeding and order, "he failed to avail himself of the judicial review process once he learned of the order [during the lawsuit] in 2011." *Id*. at *3. The Court of Appeals noted that: "A notice problem only creates a different starting date for the time to seek judicial review; it does not eliminate the requirement." *Id*. at *4 (citations omitted). The *Bedell* situation was remarkably similar to the present case:

> [A]ny notice problem here was resolved arguably no later than when Bedell learned of the existence of the administrative order by receiving service of the petition [in 2010], and certainly no later than when he received a copy of the administrative order as an exhibit in the appendix of the State's Motion for Partial Summary Judgment [in 2011]. … The undisputed record shows that Bedell did not file the counterclaim or any petition for judicial review within the thirty days of receiving a copy of the administrative order. Bedell has not shown sufficient good cause for failing to exhaust his judicial-review remedy after receiving notice of the order.

*Id*. at *4 (footnotes and citations omitted). Accordingly, the state's plea to the jurisdiction was affirmed. *Id*. at *5.

In the present case, the TCEQ has actually given Baxter notice of the Order *three* times: <u>first</u>, when the Order was initially issued, CR 1676-94, 1679, 1695; <u>second</u>, when the TCEQ filed its counterclaim and third-party petition, CR 283-424; and <u>third</u>, when the TCEQ filed its Plea to the Jurisdiction, CR 1582-1703. Even if the first and second notices were defective, the TCEQ's Plea to the Jurisdiction, with the Order attached, gave Baxter complete notice regarding how to appeal, including the applicable section of the statute. *See* CR 1587, citing Tex. Health & Safety Code § 361.321(c). Any Due Process violation has been cured.

## D. The cases that Baxter cites are inapposite.

Baxter cites various cases concerning the importance of notice to Due Process. However, as Baxter readily admits, the "notice required will vary with circumstances and conditions." Appellant's Br. 22, quoting *City of Dallas v. VSC, LLC,* 347 S.W.3d at 238 (other citations omitted). Notice is required at several steps in an administrative or legal process. Due Process does not require an administrative agency to advise a party concerning its

right to appeal a final administrative order.

### 1. Cases involving the absence of notice, rather than the adequacy of notice, are inapposite.

Some of Baxter's cited cases involve the absence of notice, not the adequacy of notice. *See, e.g., Peralta v. Heights Med. Ctr. Inc.*, 485 U.S. 80, 86 (1988) (no proper service of process); *Barrera-Montenegro v. United States*, 74 F.3d 657, 660 (5th Cir. 1996) (notice of forfeiture procedure and seizure sent to wrong address). These cases are not precedential here because in the present case the notice was sent and received at the correct address.

### 2. Cases involving service at the commencement of an action are inapposite.

Due Process requires that a person be notified of the commencement of a legal or administrative proceeding that might affect the person's substantive property rights. Baxter cites several such cases: *see, e.g., Walker v. City of Hutchinson, Kan.*, 352 U.S. 112 (1956) (notice of condemnation proceedings against property, where landowner's name was known and was on official records); *Houston v. Fore*, 412 S.W.2d 35, 39 (Tex. 1967)

(constructive notice of administrative hearing on street paving improvements); *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) (denial of indigent's access to courts due to inability to pay); *In re Ruffalo*, 390 U.S. 544, 550 (1968) (notice of charge in attorney disbarment proceedings).

None of these cases provides a precedent for the present case, since this case involves a final order, not the commencement of proceedings, and Baxter received actual and legal notice of the Order when it was issued. In addition, Baxter had had notice at several stages of the administrative Superfund proceeding. AR 30601-05, 17912-18, 17945-54, 33053-64.

### 3. Cases involving significant events during a proceeding are inapposite.

Due Process requires notice of certain significant events during the pendency of an action. Baxter cites many cases: *see, e.g., Mosser v. Plano Three Venture*, 893 S.W.2d 8, 12–13 (Tex. App.—Dallas 1994, no writ) ("notice" of summary judgment hearing that did not include date and time of hearing); *Fuentes v. Shevin*, 407 U.S. 67 (1972) (prejudgment replevin action taking chattels without opportunity to be heard); *Williams v. Holley*,

653 S.W.2d 639, 640 (Tex. App.—Waco 1983, writ ref'd n.r.e.) (inadequate

notice of pleadings and trial setting); *Langdale v. Villamil*, 813 S.W.2d 187

(Tex. App.—Houston [14th Dist.] 1991, no writ) (notice to attorney after

termination of attorney-client relationship, not imputed to former client);

*L.B.L. Oil Co. v. Int'l Powers Servs., Inc.*, 777 S.W.2d 390, 391 (Tex. 1989) (per

curiam) (failure to give notice of hearing on motion for default judgment);

*Lopez v. Lopez*, 757 S.W.2d 721, 723 (Tex. 1988) (per curiam) (lack of notice

of trial setting); *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986) (lack of

notice to client where attorney withdrew two days before trial and did not

turn over file to substituted attorney); *Misium v. Misium*, 902 S.W.2d 195

(Tex. App.—Eastland 1995, writ denied) (failure of counsel to inform client

of upcoming trial during counsel's motion to withdraw); *Moss v. Malone*,

880 S.W.2d 45, 51 (Tex. App.—Tyler 1994, writ denied) (lawyer's with-

drawal without taking steps to protect party's rights); *Tramco Enters., Inc. v.*

*Indep. Am. Sav. Ass'n*, 739 S.W.2d 944, 948 (Tex. App.—Fort Worth 1987, no

writ) (inadequate notice of trial setting); *Chow v. Dole*, 677 S.W.2d 220 (Tex.

App.—Houston [1st Dist.] 1984, no writ) (notice of trial setting); *Rotello v. State*, 492 S.W.2d 347, 349 (Tex. Civ. App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.) (no proper notice and hearing prior to dismissal); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996) (inadequate service of summary judgment motion).

None of these cases holds that advice concerning a right to appeal must be given as part of notice of a final administrative or legal order. They are not precedential as regards the present case.

### 4. Cases involving administrative decisions without an appealable final order are irrelevant.

Notice of certain administrative actions must be given in time for affected parties to protest or respond. Baxter produces a plethora of precedents: *see, e.g., City of Waco v. Roddey*, 613 S.W.2d 360, 365 (Tex. App.—Waco 1981, no writ) (notice before a city orders demolition of buildings); *Memphis Light, Gas, & Water Div. v. Craft*, 436 U.S. 1, 45 (1978) (notice in municipal utility bills that payment was overdue and service would be discontinued); *Bradford v. Edelstein*, 467 F. Supp. 1361, 1373 (S.D. Tex. 1979)

(notice and opportunity to be heard before termination of public utilities);

*Hess & Clark, Div. of Rhodia, Inc. v. Food & Drug Admin.*, 495 F.2d 975, 983

(D.C. Cir. 1974) (notice before agency withdraws approval of drug applica-

tions and related regulations); *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974)

(written notice to prisoners and opportunity to be heard before loss of

good-time or imposition of solitary confinement); *Navato v. Sletten*, 560 F.2d

340 (8th Cir. 1977) (notice and opportunity to respond to allegations before

a medical residency training committee); *N. Alabama Exp., Inc. v. United*

*States*, 585 F.2d 783 (5th Cir. 1978) (notice in Federal Register of the true

nature of a common carrier application); *Fed. Commc'ns Comm'n v. Pottsville*

*Broad. Co.*, 309 U.S. 134, 143 (1940) (denial of application for a radio station:

"To be sure, the laws under which these agencies operate prescribe the

fundamentals of fair play."); *City of W. Covina v. Perkins*, 525 U.S. 234 (1999)

(notice of state law remedies when police seize property for a criminal

investigation); *Dusenbery v. United States*, 534 U.S. 161 (2002) (notice of

forfeiture by FBI, including notice by certified mail to federal prison where

42

claimant was incarcerated, satisfied due process); *Jones v. Flowers*, 547 U.S.

220 (2006) (notice and opportunity for hearing, as appropriate, before

taking of property for unpaid taxes); *City of Dallas*, 347 S.W.3d at 231 (in a

property seizure from a storage facility, actual notice was sufficient to

impose on facility operator the duty to pursue statutory remedy.)

Such cases speak to Due Process generally, but do not address the

notice that must be given in a final order. More importantly, none say that

an agency must give advice concerning a party's right to appeal a final

order.

### 5. Due Process may enhance statutory notice requirements, but the cited cases are inapposite.

In cases where a statute or regulation specifies an administrative

process, Due Process may guarantee additional protection. Baxter cites

many cases: *see, e.g., Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)

(right to have adjudication of the merits of unlawful termination, as

provided under the Illinois Fair Employment Practices Act); *Cleveland Bd. of*

*Educ. v. Donnelly*, 470 U.S. 532, 542 (1985) (terminated employees entitled to

43

post-termination administrative procedures, as provided by Ohio statute);

*Valero S. Tex. Processing Co. v. Starr Cnty. Appraisal Dist.*, 954 S.W.2d 863, 865 (Tex. App.—San Antonio 1997, pet. denied) (notice required under article 41.47(d) of the Texas Tax Code: "The orders did not reference the property in question by legal description or a taxpayer account number but by docket number which was evidently assigned by the appraisal district for internal administrative purposes.").

These cases are not precedential because Baxter received the notice prescribed under Texas law, and the law requires no other notice or advice concerning this appeal.

**III.**

Issue 3: Even if the Order had been issued in violation of Due Process it is not void but merely voidable—and it still must be timely appealed for the courts to have jurisdiction. (Response to both sections of Appellant's Brief.)

**A. Even if the Order was misleading and had been issued in violation of Due Process, it was not void; it still had to be timely appealed.**

A flawed administrative order, which may be reversible on appeal, nevertheless must be timely appealed. The courts lack jurisdiction other-wise. It follows that administrative orders issued in violation of Due Process still must be timely appealed. Such orders are not void, but merely voidable on appeal.

**1. The courts cannot acquire jurisdiction by mistake or accident.**

A failure to timely appeal an administrative order can be fatal to the appeal, even if the failure is an excusable mistake. *See, e.g., Tex. Alcoholic Beverage Comm'n v. Sfair*, 786 S.W.2d 26, 27 (Tex. App.—San Antonio 1990,

45

writ denied) (untimely appeal of decision of Texas Alcoholic Beverage Commission after overruling of motion for rehearing). The Court of Appeals noted: "The Sfairs' tardiness was undoubtedly brought on by the actions taken by the Commission in *sua sponte* granting the rehearing and setting a new hearing date." *Id*. Nevertheless, despite this justifiable excuse, the appeal was dismissed. *Id*. at 28. The court explained:

> An appeal from an administrative agency is not a matter of right, it is set out by statute and must be strictly complied with in order to vest the district court with jurisdiction. … The procedure to be followed is mandatory and jurisdictional. … The fact that the agency may have erred in *sua sponte* granting the motion for rehearing and engaging in subsequent proceedings does not excuse the Sfairs' late filing of their petition in the district court.

Id. at 27-28 (citations omitted). Thus, even if the agency may have confused the situation by its procedures, the courts still lack jurisdiction to review an administrative order except within the statutory waiver of sovereign immunity.

## 2. The courts cannot acquire jurisdiction because a party did not understand the law.

In the absence of a specific statutory requirement, an agency is not required to advise applicants when a motion for rehearing is overruled by operation of law. *See Hernandez v. Tex. Dep't of Ins.*, 923 S.W.2d 192 (Tex. App.—Austin 1996, no writ) (hearing on insurance agent's license: "From the plain language of [the Administrative Procedure Act] Hernandez *knew or was charged with knowledge* that if the agency did not act on her motion by January 16, 1995, forty-five days after the notice of November 30, it would be overruled by operation of law."). *Id.* at 195 (emphasis added, footnote omitted). Hernandez failed to file a timely appeal after her motion for rehearing was overruled by operation of law, and her appeal was dismissed. *Id.* at 196.

## 3. The courts cannot gain jurisdiction by consent or through estoppel.

Even in cases where an agency may have mislead a party concerning the right to appeal, the courts do not acquire jurisdiction unless the party

has exhausted administrative remedies. *See, e.g., Daniel v. Dallas Indep. Sch. Dist.*, 351 S.W.2d 356 (Tex. Civ. App.—El Paso 1961, writ ref'd n.r.e.) (alleged wrongful termination of school custodian). The appellant custodian asserted that the superintendent and the school board had told him there was "nothing more for him to do, and that as far as they were concerned the matter was concluded." *Id*. at 358. The appellant failed to file a timely petition for review, and the courts had no jurisdiction. *Id*. The court of appeals said:

> [W]e must say that jurisdiction of a court is so important and essential that it has long been held that it cannot be conferred by estoppel. It is a statutory creation or enactment, and cannot be waived or conferred by consent or estoppel, and a court without jurisdiction cannot render a valid judgment.

*Id*. at 359.  *See also, Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293 (Tex. 2001) (wrongful termination case in which employee claims that school district's attorney misled her). The court said, "Even if the District misled Sullivan as she claims, her failure to exhaust her administrative remedies is fatal to her action." *Id*. at 295.

### 4. The Texas rule concerning misleading notice is not universally followed.

Some jurisdictions hold that notice and advice concerning the right to appeal, if any is given, must be correct. *See, e.g., Baxter v. Colvin*, 14-CV-01306-WHO, 2014 WL 6985149, at *4 (N.D. Cal. Dec. 10, 2014) (notice of decision that was "inherently ambiguous" because it "did not clearly inform plaintiff how and whether she could pursue her right to an oral hearing … while also objecting to [the] decision on its merits").

The federal courts have found Due Process violations where there has been misleading notice and detrimental reliance. *See* the *Gonzalez* line of cases, *supra* sec. II.B.4, *et seq*. *See also*, *Butland v. Bowen*, 673 F. Supp. 638, 640 (D. Mass. 1987) (notice of denial of Social Security benefits was misleading and violated Due Process: "Although the notice assured plaintiff that she had 'the right to file another application at any time,' further applications for disability benefits were in fact barred, unbeknownst to her, after four years.").

Thus, precedents in other states and the federal system have held that

notice concerning the right to appeal, if given, must be correct. However, Due Process does not require that such notice be given in the first place. TCEQ's failure to give it in the present case simply does not rise to the level of a Due Process violation.

**B. Baxter's cited cases do not support the proposition that the Order is void**

Baxter argues that "the Order should have contained at least a range of possible expense and some kind of notice of a potentially responsible party's appellate remedies" and, because it did not, it was void. Appellant's Br. 27. For this proposition, Baxter cites three cases: *Sec. State Bank & Trust v. Bexar Cnty.*, 397 S.W.3d 715 (Tex. App.—San Antonio 2012, pet. denied); *New York Life Ins. Co. v. Brown*, 84 F.3d 137 (5th Cir. 1996); and *In re Guardianship of B.A.G.*, 794 S.W.2d 510 (Tex. App.—Corpus Christi 1990, no writ). However, each of these cases involves a failure of service at the commencement of a legal action, not a failure to provide notice of the potential costs of a final order or the right to appeal.

### 1. *Security State Bank and Trust* involved a complete lack of notice rather than incomplete notice.

The *Security State Bank & Trust* case involved a tax sale of real property against which a bank held a lien. *Sec. State Bank & Trust*, 397 S.W.3d at 717. "The Bank asserts that, as a record lienholder, it was entitled to notice and joinder in the delinquent tax suit and to notice of the subsequent tax sale, and the lack of notice violates due process and renders the tax sale void as to the Bank. We agree." *Id*. Accordingly, the Court of Appeals vacated and set aside the tax sale as to the bank's lien interest. *Id*. The lienholder bank had a Due Process right to receive notice: "Because a tax sale significantly affects a lienholder's property interest, due process requires that the lienholder receive notice of the pending tax sale." *Id*. at 721, citing *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983).

The second issue in *Sec. State Bank & Trust* was the remedy. "A judgment entered without notice or service to an interested party is 'constitutionally infirm' in that the failure to provide notice violates 'the most rudimentary demands of due process of law.'" *Id*. at 723, quoting *Peralta v.*

51

*Heights Med. Ctr., Inc.*, 485 U.S. at 84. "As opposed to a mere defect in service, a complete failure or lack of service on a party with a property interest adversely affected by the judgment constitutes a due process violation that warrants setting the judgment aside." *Sec. State Bank & Trust*, 397 S.W.3d at 723. (In this case, of course, Baxter received service.)

The Court of Appeals said, "A collateral attack may be used to set aside a judgment based on a complete lack of notice to an interested party in violation of their due process rights." *Id*. at 723 (citations omitted). "A judgment is 'void,' and thus subject to collateral attack, if there was a complete lack of service in violation of due process." *Id*., citing *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 275 (Tex. 2012). *PNS Stores* had held, "When a defective citation is served, but the citation puts the defendant on notice of asserted claims in a pending suit, and the technical defects are not of the sort that deprive a litigant of the opportunity to be heard, we reject them as grounds sufficient to support a collateral attack." *PNS Stores*, 379 S.W.3d at 275.

Thus, following the precedent of *Security State Bank & Trust* and *PNS Stores*, the service of the Order upon Baxter by certified mail was not defective and the Order cannot be collaterally attacked.

### 2. *New York Life Insurance* involved service at the wrong address.

In *New York Life Ins. Co. v. Brown*, 84 F.3d at 137, a stakeholder-insurer filed an interpleader action against two claimants seeking to establish the ownership of life insurance policy. Summary judgment was entered against a claimant by default. The Court of Appeals held that, although the defaulted claimant had appeared by participating in a telephone conference before a magistrate judge and making a telephone call to plaintiff's counsel, the attempt to serve the claimant with a copy of the summary judgment motion at an address that was not his last-known address did not provide proper notice. The absence of notice was a denial of Due Process, rendering the judgment void. *New York Life*, 84 F.3d at 139. Applying this precedent to the present case, the actual notice given to Baxter by providing a copy of the Order conformed with Due Process.

53

### 3. *In re Guardianship of B.A.G.* involved a court's lack of personal jurisdiction rather than notice of a right to appeal.

The third case is *In re Guardianship of B.A.G.*, 794 S.W.2d at 510, an action for appointment of a temporary guardian for B.A.G., an allegedly incapacitated adult. B.A.G. did not receive personal service and did not appear at any of the hearings. *Id.* at 513. She did not consult counsel before the hearings and could not have made a knowing and voluntary waiver of her rights. *Id.* The trial court did not make a determination that her appearance should be waived, as required by the Probate Code, and her relatives were not properly notified as required by statute. *Id.* The Corpus Christi Court of Appeals said:

> A judgment is void only when it is apparent that the court rendering the judgment had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court. … A void judgment is one entirely null within itself, and which is not susceptible of ratification or confirmation, and its nullity cannot be waived. … Furthermore, if a court has not acquired jurisdiction of *both* the parties and the subject matter of the litigation, the judgment is void and is subject to both direct and collateral attack. Therefore, appellants may collaterally attack the trial court's judgment if the trial court

lacked complete jurisdiction over the parties.

*Id.* at 511-12 (citations omitted). Accordingly, the Court held, "the [trial] court lacked personal jurisdiction over B.A.G. and all of its actions regarding her guardianship are void." *Id.* at 513.

Thus, *Security State Bank & Trust*, *New York Life*, and *Guardianship of B.A.G.* all hold that a party to a legal action must be properly served at the commencement of the action; otherwise, the court lacks personal jurisdiction and any resulting judgment is void. In the present case Baxter was properly served with a copy of the Order; thus Due Process was satisfied.

## PRAYER

For the reasons stated above, Appellee the Texas Commission on Environmental Quality asks the Court to overrule Appellant's issues and affirm the order of the District Court.

Respectfully submitted this 13th day of November 2015.

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

PRISCILLA M. HUBENAK
Chief, Environmental Protection Division


  /s/  *Thomas H. Edwards*
THOMAS H. EDWARDS
Assistant Attorney General
Tex. Bar No. 06461800
Thomas.Edwards@
TexasAttorneyGeneral.gov

CRAIG J. PRITZLAFF
Assistant Attorney General
Tex. Bar No. 24046658
Craig.Pritzlaff@
TexasAttorneyGeneral.gov

Office of the Attorney General
Environmental Protection Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

ATTORNEYS FOR THE TEXAS
COMMISSION ON
ENVIRONMENTAL QUALITY

**CERTIFICATE OF COMPLIANCE**

I certify that this document was produced on a computer using Word Perfect 13.0 and contains 9,979 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

 /s/  *Thomas H. Edwards*
THOMAS H. EDWARDS

# CERTIFICATE OF SERVICE

I, Thomas H. Edwards, do hereby certify that a true and correct copy of the foregoing document, with appendix, was served by electronic service on the following parties or attorneys of record on the 13th day of November 2015.

**Attorneys**

Elliott S. Cappuccio
ecappuccio@pulmanlaw.com
Leslie Sara Hyman
lhyman@pulmanlaw.com
Etan Z. Tepperman
etepperman@pulmanlaw.com

PULMAN, CAPPUCCIO, PULLEN,
BENSON & JONES, LLP
2161 NW Military Hwy., Ste. 400
San Antonio, Texas 78213
(210) 222-9494 (Telephone)
(210) 892-1610 (Facsimile)

**Parties**

Baxter Oil Service, Ltd.

/s/ *Thomas H. Edwards*
THOMAS H. EDWARDS

**APPENDIX**

**APPENDIX**

# MOTION FOR REHEARING

TO:     Chairman Bryan Shaw               DATE: March 15, 2010
         Commissioner Buddy Garcia
         Commissioner Carlos Rubinstein
         Les Trobman, General Counsel (2 copies)

FROM:    LaDonna Castañuela, Chief Clerk

Applicant/Permittee: Voda Petroleum, Inc.

Permit Type: SPF       Permit No.: N/A      Docket No.: 2009-1706-SPF

*Note: If any dates fall on a weekend or a holiday, the next working date becomes the due date.*

Commission action: 2/10/2010

MFR Filed By:   John Riley

MFR Filed For:   Luminant

Order Mailed Date:   2/19/2010

Date MFR Filed (OCC date stamp): 3/12/2010

Date MFR Due:   3/15/2010
*(23 days after date order was mailed)*

Date Replies to MFR Due:   3/24/2010
*(33 days from order mailed date)*

MFR Overrules by Operation of Law: 4/8/2010    Possible agenda dates [SOS Notice Deadline]:
*(48 days from order mailed date)*        3/30/2010   [3/22/2010]

If extended, action due by: 5/24/2010      Possible agenda dates [SOS Notice Deadline]:
*(93 days from order mailed date)*       4/14/2010   [4/6/2010]
                                   4/28/2010   [4/20/2010]
                                   5/19/2010   [5/11/2010]

---

Attachments:    ☑ Motion

Permit/Order & cover letter:    ☑ Attached  ☐ Previously Submitted

Was an RTC prepared:   ☐ Yes (attached)  ☑ No    ☐ Previously Submitted

---

cc:    (Tracking Sheet Only)
       Office of Public Interest Counsel      Environmental Law Division    John Racanelli, Financial Administration
       Program Staff                      OCC-Final Docs Team Leader    Laurie Eaves, OCE

VODA_AR_00000010





# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

*Protecting Texas by Reducing and Preventing Pollution*

September 12, 2008

**CERTIFIED MAIL**
91 7108 2133 3934 5604 8317

BAXTER OIL SERVICE LTD
MR SAM BAXTER , PRESIDENT
4828 N SHEPPARD
HOUSTON, TX 77018-2216

Re:  Proposed Remedial Action for the Voda Petroleum, Inc., Proposed State Superfund Site, Clarksville City, Gregg County, Texas

Dear Sir or Madam:

Pursuant to the Texas Solid Waste Disposal Act, Tex. Health & Safety Code Ch. 361, the Texas Commission on Environmental Quality (TCEQ) is required to publish notice of a public meeting to discuss the proposed remedial action for the Voda Petroleum, Inc., Proposed State Superfund Site. The TCEQ shall publish notice of the meeting in the *Texas Register* and in a newspaper circulating in the county in which the facility is located at least 30 days before the date of the public meeting. The TCEQ is also required to mail the same information to each potentially responsible party (PRP) by certified mail, return receipt requested, at least 30 days before the public meeting. This letter is to notify you that the TCEQ will publish a notice of the public meeting to discuss the proposed remedial action for the Voda Petroleum, Inc., Proposed State Superfund Site. The notice is scheduled to be published in the *Texas Register* and the *Longview News Journal* on September 19, 2008. The notice will provide information regarding the proposed remedial action and the date, time, and place of the meeting, which is also included in this letter.

The public meeting for the Voda Petroleum, Inc., Proposed State Superfund Site is scheduled for Thursday, October 23, 2008, in the Broadway Elementary School Cafeteria, 200 East Broadway, Gladewater, Texas, beginning at 7:00 p.m. The public comment period begins September 23, 2008 and ends October 23, 2008, at the close of the public meeting. The public meeting is legislative in nature and not a contested case hearing under the Texas Government Code Chapter 2001. The meeting shall be held to discuss the proposed remedial action, receive comments from the public on the proposed remedial action, obtain additional information regarding the facility, and identify any additional potentially responsible parties.

According to Section 361.187 of the Solid Waste Disposal Act, PRPs have sixty (60) days following the public meeting on the proposed remedial action to respond in writing to the TCEQ with a Good Faith Offer to fully fund or conduct the proposed remedial action at the Site. A Good Faith Offer is defined at Section 335.342(5) of 30 Texas Administrative Code. A Good Faith Offer may be made by submitting correspondence to the TCEQ Project Manager which states the PRP's intent to enter into an Agreed Administrative Order with the TCEQ to fully fund or conduct a remedial action. In accordance with the sixty (60) day statutory time frame, the Good Faith Offer must be received by the TCEQ Project Manager no later than 5:00 p.m. on December 22, 2008. If, after the public meeting on the proposed remedial action, the TCEQ determines that comments received at the public meeting will not significantly change the proposed remedial action, then the TCEQ will again mail

VODA_AR_00017912

BAXTER OIL SERVICE LTD
Page 2
September 12, 2008

notice to all identified PRPs to confirm that December 22, 2008, is the date by which the Good Faith Offer to fully fund or perform the proposed remedial action must be received by the TCEQ. If a Good Faith Offer is made by all or some of the PRPs within this period, those parties have an additional 60 days to negotiate an Agreed Administrative Order from the TCEQ, which shall include a scope of work. The TCEQ may not require an admission of liability in the Agreed Administrative Order. If a Good Faith Offer is not received within the specified time period, the TCEQ will proceed with an Administrative Order and may complete the remedial action utilizing state funds pursuant to the Solid Waste Disposal Act. In such case, the TCEQ will seek to recover all of its costs, including oversight costs, as set out in Section 361.197 of the Solid Waste Disposal Act.

Enclosed is the Proposed Remedial Action Document, which includes the proposed remedial action alternatives. Based on consideration of the requirements of the Solid Waste Disposal Act, and 30 Texas Administrative Code Chapter 335, Subchapters K and S, the TCEQ is proposing excavation with off-site disposal for the on-site surface and subsurface soil containing contaminants above the applicable cleanup levels, and the installation of reactive biobarrier wells with collection and analysis of groundwater samples to confirm that the reactive biobarrier system is reducing the concentrations of contaminants in the shallow groundwater at the Site. The reactive biobarrier system would remain in place until it is demonstrated that the concentrations of contaminants in the groundwater no longer exceed their applicable cleanup standards. An institutional control would be placed on each property which overlies groundwater contaminated above the cleanup levels and would describe the specific area of the contaminated groundwater plume on the affected property. The institutional controls are to be secured and implemented in accordance with the Texas Risk Reduction Program Rules and would remain in place until it is demonstrated that concentrations of contaminants in groundwater no longer exceed the applicable cleanup levels. These recommended alternatives are the most cost effective, reasonable and appropriate remedy to address the Site.

Correspondence should be sent to my attention using mail code MC-136 at the address listed below and **must include the following assigned reference number specified in this letter: SUP0670016.** If you have any questions, please contact me at (512) 239-2501, or email at cboucher@tceq.state.tx.us

Sincerely,

Carol Boucher, P.G., Project Manager
State Lead Section
Remediation Division
Texas Commission on Environmental Quality

CB/sr

Enclosures

VODA_AR_00017913

Buddy Garcia, *Chairman*
Larry R. Soward, *Commissioner*
Bryan W. Shaw, Ph.D., *Commissioner*
Mark R. Vickery, P.G., *Executive Director*



# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY
*Protecting Texas by Reducing and Preventing Pollution*

September 12, 2008

**CERTIFIED MAIL**
91 7108 2133 3934 5604 8317

BAXTER OIL SERVICE LTD
MR SAM BAXTER , PRESIDENT
4828 N SHEPPARD
HOUSTON, TX 77018-2216

Re:     Proposed Remedial Action for the Voda Petroleum, Inc., Proposed State Superfund Site,
        Clarksville City, Gregg County, Texas

Dear Sir or Madam:

Pursuant to the Texas Solid Waste Disposal Act, Tex. Health & Safety Code Ch. 361, the Texas Commission on Environmental Quality (TCEQ) is required to publish notice of a public meeting to discuss the proposed remedial action for the Voda Petroleum, Inc., Proposed State Superfund Site. The TCEQ shall publish notice of the meeting in the *Texas Register* and in a newspaper circulating in the county in which the facility is located at least 30 days before the date of the public meeting. The TCEQ is also required to mail the same information to each potentially responsible party (PRP) by certified mail, return receipt requested, at least 30 days before the public meeting. This letter is to notify you that the TCEQ will publish a notice of the public meeting to discuss the proposed remedial action for the Voda Petroleum, Inc., Proposed State Superfund Site. The notice is scheduled to be published in the *Texas Register* and the *Longview News Journal* on September 19, 2008. The notice will provide information regarding the proposed remedial action and the date, time, and place of the meeting, which is also included in this letter.

The public meeting for the Voda Petroleum, Inc., Proposed State Superfund Site is scheduled for Thursday, October 23, 2008, in the Broadway Elementary School Cafeteria, 200 East Broadway, Gladewater, Texas, beginning at 7:00 p.m. The public comment period begins September 23, 2008 and ends October 23, 2008, at the close of the public meeting. The public meeting is legislative in nature and not a contested case hearing under the Texas Government Code Chapter 2001. The meeting shall be held to discuss the proposed remedial action, receive comments from the public on the proposed remedial action, obtain additional information regarding the facility, and identify any additional potentially responsible parties.

According to Section 361.187 of the Solid Waste Disposal Act, PRPs have sixty (60) days following the public meeting on the proposed remedial action to respond in writing to the TCEQ with a Good Faith Offer to fully fund or conduct the proposed remedial action at the Site. A Good Faith Offer is defined at Section 335.342(5) of 30 Texas Administrative Code. A Good Faith Offer may be made by submitting correspondence to the TCEQ Project Manager which states the PRP's intent to enter into an Agreed Administrative Order with the TCEQ to fully fund or conduct a remedial action. In accordance with the sixty (60) day statutory time frame, the Good Faith Offer must be received by the TCEQ Project Manager no later than 5:00 p.m. on December 22, 2008. If, after the public meeting on the proposed remedial action, the TCEQ determines that comments received at the public meeting will not significantly change the proposed remedial action, then the TCEQ will again mail

P.O. Box 13087 • Austin, Texas 78711-3087 • 512-239-1000 • Internet address: www.tceq.state.tx.us
printed on recycled paper

VODA_AR_00017914

notice to all identified PRPs to confirm that December 22, 2008, is the date by which the Good Faith Offer to fully fund or perform the proposed remedial action must be received by the TCEQ. If a Good Faith Offer is made by all or some of the PRPs within this period, those parties have an additional 60 days to negotiate an Agreed Administrative Order from the TCEQ, which shall include a scope of work. The TCEQ may not require an admission of liability in the Agreed Administrative Order. If a Good Faith Offer is not received within the specified time period, the TCEQ will proceed with an Administrative Order and may complete the remedial action utilizing state funds pursuant to the Solid Waste Disposal Act. In such case, the TCEQ will seek to recover all of its costs, including oversight costs, as set out in Section 361.197 of the Solid Waste Disposal Act.

Enclosed is the Proposed Remedial Action Document, which includes the proposed remedial action alternatives. Based on consideration of the requirements of the Solid Waste Disposal Act, and 30 Texas Administrative Code Chapter 335, Subchapters K and S, the TCEQ is proposing excavation with off-site disposal for the on-site surface and subsurface soil containing contaminants above the applicable cleanup levels, and the installation of reactive biobarrier wells with collection and analysis of groundwater samples to confirm that the reactive biobarrier system is reducing the concentrations of contaminants in the shallow groundwater at the Site. The reactive biobarrier system would remain in place until it is demonstrated that the concentrations of contaminants in the groundwater no longer exceed their applicable cleanup standards. An institutional control would be placed on each property which overlies groundwater contaminated above the cleanup levels and would describe the specific area of the contaminated groundwater plume on the affected property. The institutional controls are to be secured and implemented in accordance with the Texas Risk Reduction Program Rules and would remain in place until it is demonstrated that concentrations of contaminants in groundwater no longer exceed the applicable cleanup levels. These recommended alternatives are the most cost effective, reasonable and appropriate remedy to address the Site.

Correspondence should be sent to my attention using mail code MC-136 at the address listed below and **must include the following assigned reference number specified in this letter: SUP0670016.** If you have any questions, please contact me at (512) 239-2501, or email at cboucher@tceq.state.tx.us

Sincerely,

Carol Boucher, P.G., Project Manager
State Lead Section
Remediation Division
Texas Commission on Environmental Quality

CB/sr

Enclosures

VODA_AR_00017915

**Notice of meeting on October 23, 2008, in Clarksville City, Texas, concerning the Voda Petroleum, Inc. Proposed state Superfund site**

The purpose of the meeting is to obtain public input and information concerning the proposed remedy for the site.

The executive director of the Texas Commission on Environmental Quality (TCEQ or commission) is issuing this public notice of a proposed selection of remedy for the Voda Petroleum state Superfund site. In accordance with 30 TAC §335.349(a) concerning requirements for the remedial action, and Texas Health and Safety Code (THSC), §361.187, concerning the proposed remedial action, a public meeting regarding the commission's selection of a proposed remedy for the Voda Petroleum, Inc. Proposed state Superfund site shall be held. The statute requires that the commission shall publish notice of the meeting in the *Texas Register* and in a newspaper of general circulation in the county in which the facility is located at least 30 days before the date of the public meeting.

The public meeting is scheduled for Thursday, October 23, 2008, 7:00 p.m., at the Broadway Elementary School Cafeteria, 200 East Broadway, in Gladewater, Texas. The public meeting is not a contested case hearing under the Texas Government Code Chapter 2001.

The site for which a remedy is being proposed, the Voda Petroleum, Inc. Proposed state Superfund site (the site), was proposed for listing on the state registry of Superfund sites in the November 17, 2000, edition of the *Texas Register* (25 *TexReg* 11594-11595). The site is located at 211 Duncan Road, Clarksville City, Gregg County, Texas.

Voda Petroleum, Inc. (aka Ultra Oil) was operated as a waste oil recycling facility from 1981 until it was abandoned in 1991. The site is located in a residential neighborhood with occupied residences directly on the east and west sides of the facility. A review of the facility waste management activity records revealed that Voda Petroleum, Inc. (aka Ultra Oil) had received, stored and processed waste gasolines; oily wastes; used oil

VODA_AR_00017916

mixed with methyl ethyl ketone, varsol, trichloroethane, toluene, and hexane; crude oil; greases; and waxes. In 1996, the EPA conducted an emergency removal of 462 55-gallon drums of grease or oily wastes, 14 55-gallon drums of corrosive wastes, 16 above-ground tanks, and associated contaminated soil. The site was then backfilled to approximate the undisturbed topography to facilitate site drainage. The U. S. Environmental Protection Agency (EPA) post removal testing of soil and groundwater samples indicated that soil and groundwater continued to be contaminated above appropriate cleanup levels.

A Feasibility Study (FS), dated January 2008, screened and evaluated remedial alternatives which could be used to cleanup the site. The FS report developed three (3) alternatives for remediation of surface and subsurface soils and three (3) alternatives for shallow groundwater. The commission prepared the Proposed Remedial Action Document in June 2008. This document presents the proposed remedy and justification for how this remedy demonstrates compliance with the relevant cleanup standards.

Based on the calculated volume of contaminated soil and the requirement for protection of groundwater, the recommended soil remedial alternative from the FS is excavation with offsite disposal. The recommended alternative is the most cost effective, reasonable and appropriate remedy to address the contaminated soil at the site.

As the shallow groundwater at the site is considered a usable groundwater resource, the groundwater must be cleaned up to drinking water standards. The Feasibility Study recommended the installation of two reactive biobarriers systems. The downgradient biobarrier would consist of a line of 64 biosubstrate injection points oriented in a 320-ft line along the margin of the plume. A second biobarrier would be installed near the source area and would consist of a line of 36 injection points along a 180-foot line. The passive barrier would be constructed by injecting biosubstrate in the upper 22 ft of the saturated zone at injection points spaced 5 ft apart. The biosubstrate would be capable of providing a long-lasting source of dissolved oxygen to promote sustained aerobic biodegradation. The recommended alternative is the most cost effective, reasonable and appropriate remedy to address the contaminated groundwater at the site.

All persons desiring to make comments may do so prior to or at the public meeting. All comments submitted prior to the public meeting must be received by 5:00 p.m on October 22, 2008, **and should be sent in writing** to Ms. Carol Boucher, P.G., Project Manager, TCEQ, Remediation Division, MC 136, P. O. Box 13087, Austin, Texas 78711-3087, or facsimile at (512) 239-2450. The public comment period for this action will end at the close of the public meeting on October 23, 2008.

A portion of the record for this site including documents pertinent to the proposed remedy is available for review during regular business hours at the Longview Public Library, 222 West Cotton Street, Longview, Texas 75601, (903) 237-1350. Copies of the complete public record file may be obtained during business hours at the commission's Records Management Center, Building E, First Floor, Records Customer Service, MC 199, 12100 Park 35 Circle, Austin, Texas 78753, (800) 633-9363 or (512) 239-2920. Photocopying of file information is subject to payment of a fee. Parking for person with disabilities is available on the east side of Building D, convenient to access ramps that are between Buildings D and E.

Information is also available regarding the state Superfund program at www.tceq.state.tx.us/remediation/superfund/sites/index.html

Persons with disabilities who have special communication or other accommodation needs who are planning to attend the meeting should contact the agency at 1-800-633-9363 or (512) 239-2141. Requests should be made as far in advance as possible.

For further information about this site or the public meeting, please call Bruce McAnally, TCEQ Community Relations, at 1-800-633-9363, extension 2141.

VODA_AR_00017918

12494430

Buddy Garcia, *Chairman*
Larry R. Soward, *Commissioner*
Bryan W. Shaw, Ph.D., *Commissioner*
Mark R. Vickery, P.G., *Executive Director*



# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

*Protecting Texas by Reducing and Preventing Pollution*

September 12, 2008

**CERTIFIED MAIL**
91 7108 2133 3934 5604 8287

BAXTER OIL SERVICE LTD
MR SAM BAXTER , PRESIDENT
PO BOX 20255
BEAUMONT, TX 77720-0255

Re:     Proposed Remedial Action for the Voda Petroleum, Inc., Proposed State Superfund Site, Clarksville City, Gregg County, Texas

Dear Sir or Madam:

Pursuant to the Texas Solid Waste Disposal Act, Tex. Health & Safety Code Ch. 361, the Texas Commission on Environmental Quality (TCEQ) is required to publish notice of a public meeting to discuss the proposed remedial action for the Voda Petroleum, Inc., Proposed State Superfund Site. The TCEQ shall publish notice of the meeting in the *Texas Register* and in a newspaper circulating in the county in which the facility is located at least 30 days before the date of the public meeting. The TCEQ is also required to mail the same information to each potentially responsible party (PRP) by certified mail, return receipt requested, at least 30 days before the public meeting. This letter is to notify you that the TCEQ will publish a notice of the public meeting to discuss the proposed remedial action for the Voda Petroleum, Inc., Proposed State Superfund Site. The notice is scheduled to be published in the *Texas Register* and the *Longview News Journal* on September 19, 2008. The notice will provide information regarding the proposed remedial action and the date, time, and place of the meeting, which is also included in this letter.

The public meeting for the Voda Petroleum, Inc., Proposed State Superfund Site is scheduled for Thursday, October 23, 2008, in the Broadway Elementary School Cafeteria, 200 East Broadway, Gladewater, Texas, beginning at 7:00 p.m. The public comment period begins September 23, 2008 and ends October 23, 2008, at the close of the public meeting. The public meeting is legislative in nature and not a contested case hearing under the Texas Government Code Chapter 2001. The meeting shall be held to discuss the proposed remedial action, receive comments from the public on the proposed remedial action, obtain additional information regarding the facility, and identify any additional potentially responsible parties.

According to Section 361.187 of the Solid Waste Disposal Act, PRPs have sixty (60) days following the public meeting on the proposed remedial action to respond in writing to the TCEQ with a Good Faith Offer to fully fund or conduct the proposed remedial action at the Site. A Good Faith Offer is defined at Section 335.342(5) of 30 Texas Administrative Code. A Good Faith Offer may be made by submitting correspondence to the TCEQ Project Manager which states the PRP's intent to enter into an Agreed Administrative Order with the TCEQ to fully fund or conduct a remedial action. In accordance with the sixty (60) day statutory time frame, the Good Faith Offer must be received by the TCEQ Project Manager no later than 5:00 p.m. on December 22, 2008. If, after the public meeting on the proposed remedial action, the TCEQ determines that comments received at the public meeting will not significantly change the proposed remedial action, then the TCEQ will again mail

P.O. Box 13087 • Austin, Texas 78711-3087 • 512-239-1000 • Internet address: www.tceq.state.tx.us
printed on recycled paper

VODA_AR_00017945

notice to all identified PRPs to confirm that December 22, 2008, is the date by which the Good Faith Offer to fully fund or perform the proposed remedial action must be received by the TCEQ. If a Good Faith Offer is made by all or some of the PRPs within this period, those parties have an additional 60 days to negotiate an Agreed Administrative Order from the TCEQ, which shall include a scope of work. The TCEQ may not require an admission of liability in the Agreed Administrative Order. If a Good Faith Offer is not received within the specified time period, the TCEQ will proceed with an Administrative Order and may complete the remedial action utilizing state funds pursuant to the Solid Waste Disposal Act. In such case, the TCEQ will seek to recover all of its costs, including oversight costs, as set out in Section 361.197 of the Solid Waste Disposal Act.

Enclosed is the Proposed Remedial Action Document, which includes the proposed remedial action alternatives. Based on consideration of the requirements of the Solid Waste Disposal Act, and 30 Texas Administrative Code Chapter 335, Subchapters K and S, the TCEQ is proposing excavation with off-site disposal for the on-site surface and subsurface soil containing contaminants above the applicable cleanup levels, and the installation of reactive biobarrier wells with collection and analysis of groundwater samples to confirm that the reactive biobarrier system is reducing the concentrations of contaminants in the shallow groundwater at the Site. The reactive biobarrier system would remain in place until it is demonstrated that the concentrations of contaminants in the groundwater no longer exceed their applicable cleanup standards. An institutional control would be placed on each property which overlies groundwater contaminated above the cleanup levels and would describe the specific area of the contaminated groundwater plume on the affected property. The institutional controls are to be secured and implemented in accordance with the Texas Risk Reduction Program Rules and would remain in place until it is demonstrated that concentrations of contaminants in groundwater no longer exceed the applicable cleanup levels. These recommended alternatives are the most cost effective, reasonable and appropriate remedy to address the Site.

Correspondence should be sent to my attention using mail code MC-136 at the address listed below and **must include the following assigned reference number specified in this letter: SUP0670016.** If you have any questions, please contact me at (512) 239-2501, or email at cboucher@tceq.state.tx.us

Sincerely,

Carol Boucher, P.G., Project Manager
State Lead Section
Remediation Division
Texas Commission on Environmental Quality

CB/sr

Enclosures

 **UNITED STATES**
**POSTAL SERVICE.**

*O/6*

Date Produced: 09/29/2008

TEXAS COMMISSION ON ENVIRONMENTAL QUALIT

The following is the delivery information for Certified Mail™ item number 7108 2133 3934 5604 8287. Our records indicate that this item was delivered on 09/24/2008 at 11:07 a.m. in BEAUMONT, TX, 77707. The scanned image of the recipient information is provided below.

Signature of Recipient:

*Sam Baxter*

*Pam Baxter*

Address of Recipient:

*20255*

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representitive.

Sincerely,

United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number: 136

VODA_AR_00017947

VODA_AR_00017948



Buddy Garcia, *Chairman*
Larry R. Soward, *Commissioner*
Bryan W. Shaw, Ph.D., *Commissioner*
Mark R. Vickery, P.G., *Executive Director*



# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

*Protecting Texas by Reducing and Preventing Pollution*

September 12, 2008

**CERTIFIED MAIL**
91 7108 2133 3934 5604 8294

BAXTER OIL SERVICE LTD
MR SAM BAXTER , PRESIDENT
5070 IRVING ST
BEAUMONT, TX 77705-5231

Re:     Proposed Remedial Action for the Voda Petroleum, Inc., Proposed State Superfund Site,
        Clarksville City, Gregg County, Texas

Dear Sir or Madam:

Pursuant to the Texas Solid Waste Disposal Act, Tex. Health & Safety Code Ch. 361, the Texas Commission on Environmental Quality (TCEQ) is required to publish notice of a public meeting to discuss the proposed remedial action for the Voda Petroleum, Inc., Proposed State Superfund Site. The TCEQ shall publish notice of the meeting in the *Texas Register* and in a newspaper circulating in the county in which the facility is located at least 30 days before the date of the public meeting. The TCEQ is also required to mail the same information to each potentially responsible party (PRP) by certified mail, return receipt requested, at least 30 days before the public meeting. This letter is to notify you that the TCEQ will publish a notice of the public meeting to discuss the proposed remedial action for the Voda Petroleum, Inc., Proposed State Superfund Site. The notice is scheduled to be published in the *Texas Register* and the *Longview News Journal* on September 19, 2008. The notice will provide information regarding the proposed remedial action and the date, time, and place of the meeting, which is also included in this letter.

The public meeting for the Voda Petroleum, Inc., Proposed State Superfund Site is scheduled for Thursday, October 23, 2008, in the Broadway Elementary School Cafeteria, 200 East Broadway, Gladewater, Texas, beginning at 7:00 p.m. The public comment period begins September 23, 2008 and ends October 23, 2008, at the close of the public meeting. The public meeting is legislative in nature and not a contested case hearing under the Texas Government Code Chapter 2001. The meeting shall be held to discuss the proposed remedial action, receive comments from the public on the proposed remedial action, obtain additional information regarding the facility, and identify any additional potentially responsible parties.

According to Section 361.187 of the Solid Waste Disposal Act, PRPs have sixty (60) days following the public meeting on the proposed remedial action to respond in writing to the TCEQ with a Good Faith Offer to fully fund or conduct the proposed remedial action at the Site. A Good Faith Offer is defined at Section 335.342(5) of 30 Texas Administrative Code. A Good Faith Offer may be made by submitting correspondence to the TCEQ Project Manager which states the PRP's intent to enter into an Agreed Administrative Order with the TCEQ to fully fund or conduct a remedial action. In accordance with the sixty (60) day statutory time frame, the Good Faith Offer must be received by the TCEQ Project Manager no later than 5:00 p.m. on December 22, 2008. If, after the public meeting on the proposed remedial action, the TCEQ determines that comments received at the public meeting will not significantly change the proposed remedial action, then the TCEQ will again mail

VODA_AR_00017949

notice to all identified PRPs to confirm that December 22, 2008, is the date by which the Good Faith Offer to fully fund or perform the proposed remedial action must be received by the TCEQ. If a Good Faith Offer is made by all or some of the PRPs within this period, those parties have an additional 60 days to negotiate an Agreed Administrative Order from the TCEQ, which shall include a scope of work. The TCEQ may not require an admission of liability in the Agreed Administrative Order. If a Good Faith Offer is not received within the specified time period, the TCEQ will proceed with an Administrative Order and may complete the remedial action utilizing state funds pursuant to the Solid Waste Disposal Act. In such case, the TCEQ will seek to recover all of its costs, including oversight costs, as set out in Section 361.197 of the Solid Waste Disposal Act.

Enclosed is the Proposed Remedial Action Document, which includes the proposed remedial action alternatives. Based on consideration of the requirements of the Solid Waste Disposal Act, and 30 Texas Administrative Code Chapter 335, Subchapters K and S, the TCEQ is proposing excavation with off-site disposal for the on-site surface and subsurface soil containing contaminants above the applicable cleanup levels, and the installation of reactive biobarrier wells with collection and analysis of groundwater samples to confirm that the reactive biobarrier system is reducing the concentrations of contaminants in the shallow groundwater at the Site. The reactive biobarrier system would remain in place until it is demonstrated that the concentrations of contaminants in the groundwater no longer exceed their applicable cleanup standards. An institutional control would be placed on each property which overlies groundwater contaminated above the cleanup levels and would describe the specific area of the contaminated groundwater plume on the affected property. The institutional controls are to be secured and implemented in accordance with the Texas Risk Reduction Program Rules and would remain in place until it is demonstrated that concentrations of contaminants in groundwater no longer exceed the applicable cleanup levels. These recommended alternatives are the most cost effective, reasonable and appropriate remedy to address the Site.

Correspondence should be sent to my attention using mail code MC-136 at the address listed below and **must include the following assigned reference number specified in this letter: SUP0670016.** If you have any questions, please contact me at (512) 239-2501, or email at cboucher@tceq.state.tx.us

Sincerely,

Carol Boucher, P.G., Project Manager
State Lead Section
Remediation Division
Texas Commission on Environmental Quality

CB/sr

Enclosures

VODA_AR_00017950

*016*


# UNITED STATES
# POSTAL SERVICE.

Date Produced: 11/03/2008

TEXAS COMMISSION ON ENVIRONMENTAL QUALIT

The following is the delivery information for Certified Mail™ item number 7108 2133 3934 5604 8294. Our records indicate that this item was delivered on 10/28/2008 at 03:20 p.m. in BEAUMONT, TX, 77705. The scanned image of the recipient information is provided below.

Signature of Recipient:

**Delivery Section**

*Margaret Baxter*
*Margaret Baxter*

Address of Recipient:

*5070 S. Irving, Beaumou*

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representitive.

Sincerely,

United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number: 136

VODA_AR_00017951



Buddy Garcia, *Chairman*
Larry R. Soward, *Commissioner*
Bryan W. Shaw, Ph.D., *Commissioner*
Mark R. Vickery, P.G., *Executive Director*



# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

*Protecting Texas by Reducing and Preventing Pollution*

September 12, 2008

**CERTIFIED MAIL**
91 7108 2133 3934 5604 8300

BAXTER OIL SERVICE LTD
MR SAM BAXTER , PRESIDENT
RR 8 BOX 50
BEAUMONT, TX 77720

Re:    Proposed Remedial Action for the Voda Petroleum, Inc., Proposed State Superfund Site,
Clarksville City, Gregg County, Texas

Dear Sir or Madam:

Pursuant to the Texas Solid Waste Disposal Act, Tex. Health & Safety Code Ch. 361, the Texas Commission on Environmental Quality (TCEQ) is required to publish notice of a public meeting to discuss the proposed remedial action for the Voda Petroleum, Inc., Proposed State Superfund Site. The TCEQ shall publish notice of the meeting in the *Texas Register* and in a newspaper circulating in the county in which the facility is located at least 30 days before the date of the public meeting. The TCEQ is also required to mail the same information to each potentially responsible party (PRP) by certified mail, return receipt requested, at least 30 days before the public meeting. This letter is to notify you that the TCEQ will publish a notice of the public meeting to discuss the proposed remedial action for the Voda Petroleum, Inc., Proposed State Superfund Site. The notice is scheduled to be published in the *Texas Register* and the *Longview News Journal* on September 19, 2008. The notice will provide information regarding the proposed remedial action and the date, time, and place of the meeting, which is also included in this letter.

The public meeting for the Voda Petroleum, Inc., Proposed State Superfund Site is scheduled for Thursday, October 23, 2008, in the Broadway Elementary School Cafeteria, 200 East Broadway, Gladewater, Texas, beginning at 7:00 p.m. The public comment period begins September 23, 2008 and ends October 23, 2008, at the close of the public meeting. The public meeting is legislative in nature and not a contested case hearing under the Texas Government Code Chapter 2001. The meeting shall be held to discuss the proposed remedial action, receive comments from the public on the proposed remedial action, obtain additional information regarding the facility, and identify any additional potentially responsible parties.

According to Section 361.187 of the Solid Waste Disposal Act, PRPs have sixty (60) days following the public meeting on the proposed remedial action to respond in writing to the TCEQ with a Good Faith Offer to fully fund or conduct the proposed remedial action at the Site. A Good Faith Offer is defined at Section 335.342(5) of 30 Texas Administrative Code. A Good Faith Offer may be made by submitting correspondence to the TCEQ Project Manager which states the PRP's intent to enter into an Agreed Administrative Order with the TCEQ to fully fund or conduct a remedial action. In accordance with the sixty (60) day statutory time frame, the Good Faith Offer must be received by the TCEQ Project Manager no later than 5:00 p.m. on December 22, 2008. If, after the public meeting on the proposed remedial action, the TCEQ determines that comments received at the public meeting will not significantly change the proposed remedial action, then the TCEQ will again mail

---

P.O. Box 13087 • Austin, Texas 78711-3087 • 512-239-1000 • Internet address: www.tceq.state.tx.us
printed on recycled paper

notice to all identified PRPs to confirm that December 22, 2008, is the date by which the Good Faith Offer to fully fund or perform the proposed remedial action must be received by the TCEQ. If a Good Faith Offer is made by all or some of the PRPs within this period, those parties have an additional 60 days to negotiate an Agreed Administrative Order from the TCEQ, which shall include a scope of work. The TCEQ may not require an admission of liability in the Agreed Administrative Order. If a Good Faith Offer is not received within the specified time period, the TCEQ will proceed with an Administrative Order and may complete the remedial action utilizing state funds pursuant to the Solid Waste Disposal Act. In such case, the TCEQ will seek to recover all of its costs, including oversight costs, as set out in Section 361.197 of the Solid Waste Disposal Act.

Enclosed is the Proposed Remedial Action Document, which includes the proposed remedial action alternatives. Based on consideration of the requirements of the Solid Waste Disposal Act, and 30 Texas Administrative Code Chapter 335, Subchapters K and S, the TCEQ is proposing excavation with off-site disposal for the on-site surface and subsurface soil containing contaminants above the applicable cleanup levels, and the installation of reactive biobarrier wells with collection and analysis of groundwater samples to confirm that the reactive biobarrier system is reducing the concentrations of contaminants in the shallow groundwater at the Site. The reactive biobarrier system would remain in place until it is demonstrated that the concentrations of contaminants in the groundwater no longer exceed their applicable cleanup standards. An institutional control would be placed on each property which overlies groundwater contaminated above the cleanup levels and would describe the specific area of the contaminated groundwater plume on the affected property. The institutional controls are to be secured and implemented in accordance with the Texas Risk Reduction Program Rules and would remain in place until it is demonstrated that concentrations of contaminants in groundwater no longer exceed the applicable cleanup levels. These recommended alternatives are the most cost effective, reasonable and appropriate remedy to address the Site.

Correspondence should be sent to my attention using mail code MC-136 at the address listed below and **must include the following assigned reference number specified in this letter: SUP0670016.** If you have any questions, please contact me at (512) 239-2501, or email at cboucher@tceq.state.tx.us

Sincerely,

Carol Boucher, P.G., Project Manager
State Lead Section
Remediation Division
Texas Commission on Environmental Quality

CB/sr

Enclosures

VODA_AR_00017953



## UNITED STATES
## POSTAL SERVICE

Date Produced: 09/29/2008

TEXAS COMMISSION ON ENVIRONMENTAL QUALIT

The following is the delivery information for Certified Mail™ item number 7108 2133 3934 5604 8300. Our records indicate that this item was delivered on 09/25/2008 at 12:32 p.m. in BEAUMONT, TX, 77707. The scanned image of the recipient information is provided below.

Signature of Recipient:

Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representitive.

Sincerely,

United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number: 136

VODA_AR_00017954

6uP0670016

November 6, 2000

CERTIFIED MAIL # Z 444 998 482
RETURN RECEIPT REQUESTED

BAXTER' S OIL SERVICE, INC.
Mr. Sam Baxter
P.O. Box 20255
RR 8, Box 50
Beaumont, TX 77720

Re:     Voda Petroleum, Inc., Clarksville City, Gregg County, Texas

Dear Mr. Baxter:

This letter is a notification that the Texas Natural Resource Conservation Commission (TNRCC) considers BAXTER' S OIL SERVICE, INC. to be a Potentially Responsible Party (PRP) for the Voda Petroleum, Inc. site located at 211 Duncan Road in Clarksville City, Gregg County, Texas. A description of the site is included with this letter as Enclosure 3. Potentially Responsible Parties include current and former landowners and facility operators, and persons who were involved in the generation, transport, storage, processing or disposal of solid waste at the site. "Person" is defined at § 361.003 of the Texas Solid Waste Disposal Act (TEX. HEALTH AND SAFETY CODE, Chapter 361) to mean an individual, corporation, organization, government or governmental subdivision or agency, business trust, partnership, association, or other legal entity. A copy of pertinent portions of the Texas Solid Waste Disposal Act and Title 30 of the Texas Administrative Code (TAC), Subchapter K are enclosed. Also enclosed for your convenience is a list of "persons" which the TNRCC considers to be PRPs for this site. This letter is also a notification that the TNRCC has conducted a reasonable search for PRPs.

The TNRCC is required by the Texas Solid Waste Disposal Act to identify and assess facilities that may constitute an imminent and substantial endangerment to public health and safety or the environment due to a release or threatened release of hazardous substances. The Voda site has been identified as such a facility; therefore, it is eligible for listing on the Registry of State Superfund Sites (the "Registry"). For this reason the site was referred to the Superfund Cleanup Section by the Superfund Site Discovery and Assessment Team of TNRCC for further action.

VODA_AR_00030601

NOTICE OF INTENT TO LIST VODA PETROLEUM, INC. SITE ON THE REGISTRY OF
STATE SUPERFUND SITES

The TNRCC will publish a notice of intent to list the facility on the state registry in the *Texas Register* on December 1, 2000, and in the *Longview News Journal*, Gregg County, Texas on December 1, 2000. This notice provides interested parties the opportunity to submit written comments to the TNRCC concerning the proposed listing on the Registry and the identification of PRPs; or attend a public meeting to discuss the proposed listing. Under Section 361.184(a) of the Texas Solid Waste Disposal Act, the TNRCC shall publish notice of the meeting in the *Texas Register* and in a newspaper of general circulation in the county in which the facility is located at least 30days before the date of the public meeting. The notice shall provide the date, time, place of the meeting. The TNRCC has scheduled a public meeting for 7:00 p.m., January 11, 2001, at the City Hall Council Chambers, located at 631 U.S. 80, in Clarksville City, Texas.

GOOD FAITH OFFER TO COMPLETE RI/FS

According to Texas Solid Waste Disposal Act § 361.185, PRPs have 90 days following the date of notice of the TNRCC's intent to list the facility on the Registry (not later than 5:00 p.m., March 1, 2001) to respond in writing to TNRCC with a Good Faith Offer to fully fund or conduct a Remedial Investigation/Feasibility Study (RI/FS) at the site. (A Good Faith Offer is defined at 30 TAC § 335.342). The purpose of an RI/FS is to determine the nature and extent of contamination associated with the site and evaluate potential remedial options. A Good Faith Offer may be made by submitting correspondence which states the PRP's intent to enter into an agreed administrative order with the TNRCC to fully fund or perform an RI/FS.

If a Good Faith Offer is received by the TNRCC within the specified time period, respondents will have an additional sixty (60) days to negotiate an agreed administrative order (including a scope-of-work) to fully fund or conduct an RI/FS.

If a good faith offer to fully fund or conduct an RI/FS is not received within the specified time period, the TNRCC may complete the RI/FS utilizing state funds or may issue an administrative order to require the implementation of an RI/FS in accordance with Texas Solid Waste Disposal Act § 361.272. If an agreed administrative order is not successfully negotiated within the specified time period, the TNRCC will seek to recover all of its costs, including oversite costs (as set out in Texas Solid Waste Disposal Act § 361.197).

REQUEST FOR PRODUCTION OF FINANCIAL DOCUMENTS

In accordance with Texas Solid Waste Disposal Act § 361.201 and 30 TAC § 335.347, the executive director of the TNRCC will make a determination whether a PRP is financially capable of participating in a facility investigation or remediation. The executive director may submit requests for the production of documents by any person who has or may have information relevant to the ability of a person to pay for or perform an investigation or a remedial action at a State Superfund site under Texas Solid Waste Disposal Act § 361.182. Therefore, if you believe that you are financially incapable of funding or conducting an RI/FS, the TNRCC hereby requests the production of financial information and documents to determine whether you are financially capable of participating in a facility investigation or remediation.

The requested financial information must be submitted to the TNRCC not later than 5:00 p.m. on January 15, 2001, to allow TNRCC time to evaluate the information before the end of the 90-day good faith offer period.

BANKRUPTCY

If you believe that your responsibility as a PRP has been Discharged in Bankruptcy under Title 11 United States Code (USC) Section 524 or if you contend that this action is stayed pursuant to 11 USC Section 362 due to a pending bankruptcy proceeding, PLEASE IMMEDIATELY provide us with certified file stamped copies of the following documents from the bankruptcy court where your bankruptcy case was filed so that these pleadings can be immediately reviewed and appropriate action taken: (1) Petition, (2) Schedules and Statement of Affairs, (3) Matrix; along with the following pleadings if applicable: (4) Disclosure Statement, (5) Plan of Reorganization, (6) Order Confirming Plan of Reorganization, and (7) Discharge Order. Please also furnish any additional pleadings from the bankruptcy court which you or your attorneys believe to be relevant to your responsibilities for the site.

NOTICE FOR CHANGE IN USE OF FACILITY

Please be aware that according to Texas Solid Waste Disposal Act § 361.186, the owner or operator of the site must provide the TNRCC with a written notice of any proposed substantial changes in the use of the site sixty (60) days prior to any proposed change in use. A substantial change in use includes, but is not limited to such actions as:

- erection of a building or other structure;
- agricultural activities;
- paving for use as a roadway or parking lot;
- creation of a park or other public or private recreational facility; and
- any other activity which might interfere with an RI/FS.

BAXTER'S OIL SERVICE, INC.
November 6, 2000
Page 4


In addition to the above, please be aware that according to 30 TAC § 335.346(a), no person may perform any partial or total removal activities at State Superfund sites or conduct on-site sampling, testing or preliminary investigations of any type without the advance written authorization of TNRCC.

REVIEW AND COPIES OF SITE RECORDS

Interested parties may review site records during normal business hours at:

> Texas Natural Resource Conservation Commission
> Central Records
> Building D, Room 190
> 12100 Park 35 Circle
> Austin, Texas 78753.

Building D of the TNRCC contains a copy service which is available for copying file information for a fee which may be billed to the requestor. Due to manpower limitations TNRCC is unable to provide copies of file material in response to telephone calls.

MAILING ADDRESS OF TNRCC PROJECT MANAGER

The mailing address of the Superfund Cleanup Section Project Manager for the Voda Petroleum Site is:

> Ms. Carol Boucher, MC 143
> Superfund Cleanup Section
> Texas Natural Resource Conservation Commission
> P.O. Box 13087
> Austin, Texas 78711-3087.

If you have any questions concerning this matter, please call me at (512) 239-2493.

Sincerely,


Carol Boucher, Project Manager
Superfund Cleanup Section

cc:     Mr. Garrett Arthur, TNRCC Legal

Enclosure 1:   List of PRPs
Enclosure 2:   Texas Solid Waste Disposal Act Sections 361.182, 361.184, 361.185, 361.186, 361.197, 361.271; and 30 Texas Administrative Code, Subchapter K,   335.342, 335.346 and 335.347
Enclosure 3:   Legal Description of the site

VODA_AR_00030604

## Card 1 (top)

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

BAXTER'S OIL SERVICE, INC.
MR. SAM BAXTER
P.O. BOX 20255
RR 8, BOX 50
BEAUMONT, TX 77720

2. Article Number (Co    Z 444 998 482

PS Form 3811, July 1999    Domestic Return Receipt    102595-99-M-1789

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)    Margaret Baxter
B. Date of Delivery    11/16/00
C. Signature    X Margaret Baxter
☐ Agent
☐ Addressee
D. Is delivery address different from item 1?    ☐ Yes    ☐ No
If YES, enter delivery address below:

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

PS Form 3800, April 1995
US Postal Service
Receipt for Certified Mail

Postmark or Date
TOTAL Postage & Fees    $
Return Receipt Showing to Whom, Date, & Addressee's Address
Return Receipt Showing to Whom & Date Delivered
Restricted Delivery Fee
Special Delivery Fee
Certified Fee
Postage    $

TXU, F/K/A TEXAS UTILITIES
C/O RICHARD ADAMS
1601 BRYAN STREET, 30TH FLOOR
DALLAS, TX 75201-3402

Z 444 998 482

## Card 2 (bottom)

PS Form 3800, April 1995
US Postal Service
Receipt for Certified Mail

Postmark or Date
TOTAL Postage & Fees    $
Return Receipt Showing to Whom, Date, & Addressee's Address
Return Receipt Showing to Whom & Date Delivered
Restricted Delivery Fee
Special Delivery Fee
Certified Fee
Postage    $

AMERICAN SPILL CONTROL
MR. WILLIAM PLOTTS
P.O. BOX 806
2601 N. HIGHWAY 175
SEAGOVILLE, TX 75159-0806

Z 444 998 482

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

LUCENT TECHNOLOGIES (AT&T)
C/O KENNETH R. ARNOLD, ESQ.
49 VALLEY DRIVE
FURLONG, PA 18925

2. Article Number (Copy    Z 444 998 481

PS Form 3811, July 1999    Domestic Return Receipt    102595-99-M-1789

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)
B. Date of Delivery
C. Signature    X
☐ Agent
☐ Addressee
D. Is delivery address different from item 1?    ☐ Yes    ☐ No
If YES, enter delivery address below:

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

VODA_AR_00030605

12732574

SUP0670096

Buddy Garcia, *Chairman*
Larry R. Soward, *Commissioner*
Bryan W. Shaw, Ph.D., *Commissioner*
Mark R. Vickery, P.G., *Executive Director*



# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

*Protecting Texas by Reducing and Preventing Pollution*

June 2, 2009

BAXTER OIL SERVICE INC
PO BOX 20255
BEAUMONT, TX 77720-0255

Re:     Voda Petroleum, Inc., Proposed State Superfund Site, Clarksville City, Gregg County, Texas
          Extension of Deadline for Response Concerning Good Faith Offer

DEAR SIR / MADAM:

The Texas Commission on Environmental Quality (TCEQ) is extending the deadline for making a good faith offer to fully fund or perform the proposed remedial action at the above-referenced site. The deadline is extended thirty (30) days from the expiration of the prior deadline; therefore, the new deadline is Monday, June 22, 2009.

Correspondence to the TCEQ regarding the Voda site should be sent to my attention using mail code MC-136 at the address listed below and **must include the following assigned reference number specified in this letter: SUP0670016.** If you have any questions, please contact me at (512) 239-2501, or cboucher@tceq.state.tx.us.

Texas Commission on Environmental Quality
P.O. Box 13087
MC-136
Austin, TX 78711-3087

Sincerely,

Carol Boucher, P.G.
Project Manager, SSDAP/Superfund Section
Remediation Division

VODA_AR_00033053



126268988

Buddy Garcia, *Chairman*
Larry R. Soward, *Commissioner*
Bryan W. Shaw, Ph.D., *Commissioner*
Mark R. Vickery, P.G., *Executive Director*

# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY
*Protecting Texas by Reducing and Preventing Pollution*

March 2, 2009

BAXTER OIL SERVICE INC
BAXTER OIL SERVICE INC
P O BOX 20255,
BEAUMONT TX 77720-0255

Re:  Voda Petroleum, Inc., Proposed State Superfund Site, Clarksville City, Gregg County, Texas
     Extension of Deadline for Response Concerning Good Faith Offer

DEAR SIR / MADAM:

The Texas Commission on Environmental Quality (TCEQ) is extending the deadline for making a good faith offer to fully fund or perform the proposed remedial action at the above-referenced site. The deadline is extended ninety (90) days from the expiration of the prior deadline; therefore, the new deadline is Friday, May 21, 2009. As stated in prior correspondence, potentially responsible parties (PRPs) are provided by statute the opportunity to make a good faith offer to fully fund or perform the proposed remedial action at the site. If a good faith offer is made by all or some of the PRPs before the new deadline of May 21, 2009, those parties will have an additional sixty (60) days to negotiate an Agreed Administrative Order with the TCEQ to fully fund or perform the selected remedial action. As part of the Agreed Administrative Order, the PRPs must also reimburse the TCEQ's expenditures for the site in accordance with Section 361.188 of the Texas Health and Safety Code.

This extension is granted at the request of the Voda Site Group (Group), a group of potentially responsible parties (PRPs) voluntarily formed for the purpose of negotiating a settlement and final administrative order with the TCEQ. As stated in the Texas Administrative Code and underscored in this correspondence, the executive director's (ED) goal in negotiating settlements is "to obtain a complete remedial investigation and remedial action . . . by PRPs, or to collect from PRPs 100 percent of the agency's cost[s]." Tex. Admin. Code § 335.351(a). The ED anticipates working closely with the Group to achieve this goal and encourages all PRPs to join the Group and participate in the process. The law affords several important advantages and opportunities to cooperative parties and participating PRPs. For more information about the Group, please contact Steve Morton, Moltz, Morton & O'Toole, LLP, at (512) 439-2172 or smorton@mmotlaw.com.

Correspondence to the TCEQ regarding the Voda site should be sent to my attention using mail code MC-136 at the address listed below and **must include the following assigned reference number specified in this letter: SUP0670016.** If you have any questions, please contact me at (512) 239-2501, or cboucher@tceq.state.tx.us.

Sincerely,

Carol Boucher, P.G., Project Manager
State Lead Section
Remediation Division

VODA_AR_00033054

Buddy Garcia, *Chairman*
Larry R. Soward, *Commissioner*
Bryan W. Shaw, Ph.D., *Commissioner*
Mark R. Vickery, P.G., *Executive Director*



# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY
*Protecting Texas by Reducing and Preventing Pollution*

March 2, 2009

BAXTER OIL SERVICE INC
SAM L BAXTER
5070 IRVING ST,
BEAUMONT TX 77705-5231

Re:    Voda Petroleum, Inc., Proposed State Superfund Site, Clarksville City, Gregg County, Texas
Extension of Deadline for Response Concerning Good Faith Offer

DEAR SIR / MADAM:

The Texas Commission on Environmental Quality (TCEQ) is extending the deadline for making a good faith offer to fully fund or perform the proposed remedial action at the above-referenced site. The deadline is extended ninety (90) days from the expiration of the prior deadline; therefore, the new deadline is Friday, May 21, 2009. As stated in prior correspondence, potentially responsible parties (PRPs) are provided by statute the opportunity to make a good faith offer to fully fund or perform the proposed remedial action at the site. If a good faith offer is made by all or some of the PRPs before the new deadline of May 21, 2009, those parties will have an additional sixty (60) days to negotiate an Agreed Administrative Order with the TCEQ to fully fund or perform the selected remedial action. As part of the Agreed Administrative Order, the PRPs must also reimburse the TCEQ's expenditures for the site in accordance with Section 361.188 of the Texas Health and Safety Code.

This extension is granted at the request of the Voda Site Group (Group), a group of potentially responsible parties (PRPs) voluntarily formed for the purpose of negotiating a settlement and final administrative order with the TCEQ. As stated in the Texas Administrative Code and underscored in this correspondence, the executive director's (ED) goal in negotiating settlements is "to obtain a complete remedial investigation and remedial action . . . by PRPs, or to collect from PRPs 100 percent of the agency's cost[s]." Tex. Admin. Code § 335.351(a). The ED anticipates working closely with the Group to achieve this goal and encourages all PRPs to join the Group and participate in the process. The law affords several important advantages and opportunities to cooperative parties and participating PRPs. For more information about the Group, please contact Steve Morton, Moltz, Morton & O'Toole, LLP, at (512) 439-2172 or smorton@mmotlaw.com.

Correspondence to the TCEQ regarding the Voda site should be sent to my attention using mail code MC-136 at the address listed below and **must include the following assigned reference number specified in this letter: SUP0670016.** If you have any questions, please contact me at (512) 239-2501, or cboucher@tceq.state.tx.us.

Sincerely,

Carol Boucher, P.G., Project Manager
State Lead Section
Remediation Division

VODA_AR_00033055



Buddy Garcia, *Chairman*
Larry R. Soward, *Commissioner*
Bryan W. Shaw, Ph.D., *Commissioner*
Mark R. Vickery, P.G., *Executive Director*



# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

*Protecting Texas by Reducing and Preventing Pollution*

January 5, 2009

BAXTER OIL SERVICE INC
BAXTER OIL SERVICE INC
P O BOX 20255
BEAUMONT TX  77720-0255

Re:    Voda Petroleum, Inc., Proposed State Superfund Site
       SUP0670016

Dear Sir or Madam:

You are invited to a settlement conference in the referenced matter, as follows:

> **Date:    Monday, February 2, 2009**
> **Time:    1:00 p.m.**
> **Place:   TCEQ Austin Headquarters**
> **Bldg. E, Agenda Room (E201S)**
> **12100 Park 35 Circle (See attached map)**
> **Austin, Texas 78753**

You may participate by conference call if you prefer; however, please be aware that the call is limited to 125 participants due to technical constraints.

> **Dial in number:**              1 866 456 0016
>                                  **(Expect an 8 - to 10-second delay before connection is made)**
> **Conference room number:**      \* 5 0 3 3 6 6 1 \*

The purpose of this meeting is to facilitate the forming of a PRP (potentially responsible party) group and the beginning of negotiations among the PRPs toward a settlement agreement with the Texas Commission on Environmental Quality.  Copies of relevant evidence will be available or can be ordered.  Please try to attend in person or by phone or send a representative.

Thank you for your cooperation in this matter.

Sincerely,

Carol Boucher, P.G., Project Manager
State Lead Section
Remediation Division

VODA_AR_00033056



Buddy Garcia, *Chairman*
Larry R. Soward, *Commissioner*
Bryan W. Shaw, Ph.D., *Commissioner*
Mark R. Vickery, P.G., *Executive Director*

# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY
*Protecting Texas by Reducing and Preventing Pollution*

December 12, 2008

BAXTER OIL SERVICE LTD
PO BOX 20255
BEAUMONT, TX 77720-0255

Re: Voda Petroleum, Inc., Proposed State Superfund Site, Clarksville City, Gregg County, Texas, Confirmation of Sixty (60) Day Good Faith Offer Period to Conduct Remedial Design/Remedial Action (RD/RA)

Dear Sir or Madam:

On October 23, 2008, the Texas Commission on Environmental Quality (TCEQ) conducted a public meeting to present the proposed remedial actions for the Voda Petroleum, Inc., Proposed State Superfund Site (Site). A TCEQ letter dated September 12, 2008, was sent to notify all identified potentially responsible parties (PRPs) for the Site about a public meeting, to provide notice of the date of the statuary Good Faith Offer period, and to provide a copy of the Proposed Remedial Action Document (PRAD), which described the proposed remedial alternatives available for the site.

The public comment period for the proposed remedial action ended on October 23, 2008. The TCEQ has reviewed and considered all public comments, a summary of which is enclosed, and determined that no modification to the proposed remedial alternatives is needed. Accordingly, the TCEQ has selected excavation with offsite disposal for the contaminated soil and enhanced bioremediation using reactive biobarriers for the contaminated groundwater as the final remedial actions for the Site.

This letter serves to confirm the dates for the Good Faith Offer period as established in the TCEQ's September 12, 2008, letter. As described in that letter, any Good Faith Offer must be received in writing by the TCEQ's Project Manager no later than 5:00 p.m. on December 22, 2008. However, a request to extend the Good Faith Offer period has been received and granted by the TCEQ. Therefore, any Good Faith Offer must be received in writing by the TCEQ's Project Manager no later than 5:00 p.m. on February 20, 2009.

According to Section 361.187 of the Texas Health and Safety Code (Code), PRPs have sixty (60) days following the public meeting on the proposed remedy to respond in writing to the TCEQ with a Good Faith Offer to fully fund or conduct the proposed remedial actions at the Site. A Good Faith Offer is defined at Section 335.342(5) of 30 Texas Administrative Code. If a Good Faith Offer is made by some or all of the potentially responsible parties before the extended deadline of February 20, 2009, those parties have up to an additional sixty (60) days to negotiate an Agreed Administrative Order, pursuant to Section 361.188 of the Code, to fully fund/perform the selected remedial actions. As part of the Agreed Administrative Order, the potentially responsible parties must also reimburse the TCEQ's past expenditures for the Site.

If a Good Faith Offer is not received within the specified time period, the TCEQ may complete the remedial actions utilizing state funds and pursue cost recovery actions against responsible parties to recover all response costs pursuant to Section 361.197 for the Code.

VODA_AR_00033057

BAXTER OIL SERVICE LTD
Page 2
December 12, 2008

The TCEQ has prepared an updated PRP contact information spreadsheet. If you would like a copy of this spreadsheet, please contact the TCEQ Project Manager and a copy will be sent to you via regular mail, email or facsimile. Please be sure to include a current mailing address, email address or facsimile telephone number with your request.

As the TCEQ Project Manager for the Site, my contact information is:

Carol Boucher, P.G.
State Lead Remediation Section
Remediation Division
MC-136
Texas Commission on Environmental Quality
P.O. Box 13087
Austin, Texas 78711-3087
Facsimile: (512) 239-2303
Email: cboucher@tceq.state.tx.us

Correspondence should be sent to my attention using mail code MC-136 at the address listed above and **must include the following assigned reference number specified in this letter: SUP0670016.** If you have any questions, please do not hesitate to contact me by telephone at (512) 239-2501 or email at cboucher@tceq.state.tx.us.

Sincerely,

Carol Boucher, P.G., Project Manager
State Lead Section
Remediation Division
Texas Commission on Environmental Quality

CB/sr

Enclosure

VODA_AR_00033058

Buddy Garcia, *Chairman*
Larry R. Soward, *Commissioner*
Bryan W. Shaw, Ph.D., *Commissioner*
Mark R. Vickery, P.G., *Executive Director*



# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY
*Protecting Texas by Reducing and Preventing Pollution*

December 12, 2008

BAXTER OIL SERVICE LTD
MR SAM BAXTER, PRESIDENT & REGISTERED AGENT
5070 IRVING ST
BEAUMONT, TX 77705-5231

Re:     Voda Petroleum, Inc., Proposed State Superfund Site, Clarksville City, Gregg County, Texas,
        Confirmation of Sixty (60) Day Good Faith Offer Period to Conduct Remedial Design/Remedial
        Action (RD/RA)

Dear Sir or Madam:

On October 23, 2008, the Texas Commission on Environmental Quality (TCEQ) conducted a public
meeting to present the proposed remedial actions for the Voda Petroleum, Inc., Proposed State Superfund
Site (Site).  A TCEQ letter dated September 12, 2008, was sent to notify all identified potentially
responsible parties (PRPs) for the Site about a public meeting, to provide notice of the date of the statuary
Good Faith Offer period, and to provide a copy of the Proposed Remedial Action Document (PRAD),
which described the proposed remedial alternatives available for the site.

The public comment period for the proposed remedial action ended on October 23, 2008.  The TCEQ has
reviewed and considered all public comments, a summary of which is enclosed, and determined that no
modification to the proposed remedial alternatives is needed.  Accordingly, the TCEQ has selected
excavation with offsite disposal for the contaminated soil and enhanced bioremediation using reactive
biobarriers for the contaminated groundwater as the final remedial actions for the Site.

This letter serves to confirm the dates for the Good Faith Offer period as established in the TCEQ's
September 12, 2008, letter.  As described in that letter, any Good Faith Offer must be received in writing
by the TCEQ's Project Manager no later than 5:00 p.m. on December 22, 2008.  However, a request to
extend the Good Faith Offer period has been received and granted by the TCEQ.  Therefore, any Good
Faith Offer must be received in writing by the TCEQ's Project Manager no later than 5:00 p.m. on
February 20, 2009.

According to Section 361.187 of the Texas Health and Safety Code (Code), PRPs have sixty (60) days
following the public meeting on the proposed remedy to respond in writing to the TCEQ with a Good
Faith Offer to fully fund or conduct the proposed remedial actions at the Site.  A Good Faith Offer is
defined at Section 335.342(5) of 30 Texas Administrative Code.  If a Good Faith Offer is made by some
or all of the potentially responsible parties before the extended deadline of February 20, 2009, those
parties have up to an additional sixty (60) days to negotiate an Agreed Administrative Order, pursuant to
Section 361.188 of the Code, to fully fund/perform the selected remedial actions.  As part of the Agreed
Administrative Order, the potentially responsible parties must also reimburse the TCEQ's past
expenditures for the Site.

VODA_AR_00033059

BAXTER OIL SERVICE LTD
Page 2
December 12, 2008

If a Good Faith Offer is not received within the specified time period, the TCEQ may complete the remedial actions utilizing state funds and pursue cost recovery actions against responsible parties to recover all response costs pursuant to Section 361.197 for the Code.

The TCEQ has prepared an updated PRP contact information spreadsheet. If you would like a copy of this spreadsheet, please contact the TCEQ Project Manager and a copy will be sent to you via regular mail, email or facsimile. Please be sure to include a current mailing address, email address or facsimile telephone number with your request.

As the TCEQ Project Manager for the Site, my contact information is:

Carol Boucher, P.G.
State Lead Remediation Section
Remediation Division
MC-136
Texas Commission on Environmental Quality
P.O. Box 13087
Austin, Texas 78711-3087
Facsimile: (512) 239-2303
Email: cboucher@tceq.state.tx.us

Correspondence should be sent to my attention using mail code MC-136 at the address listed above and **must include the following assigned reference number specified in this letter: SUP0670016.** If you have any questions, please do not hesitate to contact me by telephone at (512) 239-2501 or email at cboucher@tceq.state.tx.us.

Sincerely,

Carol Boucher, P.G., Project Manager
State Lead Section
Remediation Division
Texas Commission on Environmental Quality

CB/sr

Enclosure

VODA_AR_00033060

Buddy Garcia, *Chairman*
Larry R. Soward, *Commissioner*
Bryan W. Shaw, Ph.D., *Commissioner*
Mark R. Vickery, P.G., *Executive Director*



# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

*Protecting Texas by Reducing and Preventing Pollution*

December 12, 2008

BAXTER OIL SERVICE LTD
MR SAM BAXTER, PRESIDENT & REGISTERED AGENT
RR 8 BOX 50
BEAUMONT, TX 77720

Re:  Voda Petroleum, Inc., Proposed State Superfund Site, Clarksville City, Gregg County, Texas, Confirmation of Sixty (60) Day Good Faith Offer Period to Conduct Remedial Design/Remedial Action (RD/RA)

Dear Sir or Madam:

On October 23, 2008, the Texas Commission on Environmental Quality (TCEQ) conducted a public meeting to present the proposed remedial actions for the Voda Petroleum, Inc., Proposed State Superfund Site (Site). A TCEQ letter dated September 12, 2008, was sent to notify all identified potentially responsible parties (PRPs) for the Site about a public meeting, to provide notice of the date of the statuary Good Faith Offer period, and to provide a copy of the Proposed Remedial Action Document (PRAD), which described the proposed remedial alternatives available for the site.

The public comment period for the proposed remedial action ended on October 23, 2008. The TCEQ has reviewed and considered all public comments, a summary of which is enclosed, and determined that no modification to the proposed remedial alternatives is needed. Accordingly, the TCEQ has selected excavation with offsite disposal for the contaminated soil and enhanced bioremediation using reactive biobarriers for the contaminated groundwater as the final remedial actions for the Site.

This letter serves to confirm the dates for the Good Faith Offer period as established in the TCEQ's September 12, 2008, letter. As described in that letter, any Good Faith Offer must be received in writing by the TCEQ's Project Manager no later than 5:00 p.m. on December 22, 2008. However, a request to extend the Good Faith Offer period has been received and granted by the TCEQ. Therefore, any Good Faith Offer must be received in writing by the TCEQ's Project Manager no later than 5:00 p.m. on February 20, 2009.

According to Section 361.187 of the Texas Health and Safety Code (Code), PRPs have sixty (60) days following the public meeting on the proposed remedy to respond in writing to the TCEQ with a Good Faith Offer to fully fund or conduct the proposed remedial actions at the Site. A Good Faith Offer is defined at Section 335.342(5) of 30 Texas Administrative Code. If a Good Faith Offer is made by some or all of the potentially responsible parties before the extended deadline of February 20, 2009, those parties have up to an additional sixty (60) days to negotiate an Agreed Administrative Order, pursuant to Section 361.188 of the Code, to fully fund/perform the selected remedial actions. As part of the Agreed Administrative Order, the potentially responsible parties must also reimburse the TCEQ's past expenditures for the Site.

VODA_AR_00033061

BAXTER OIL SERVICE LTD
Page 2
December 12, 2008

If a Good Faith Offer is not received within the specified time period, the TCEQ may complete the remedial actions utilizing state funds and pursue cost recovery actions against responsible parties to recover all response costs pursuant to Section 361.197 for the Code.

The TCEQ has prepared an updated PRP contact information spreadsheet. If you would like a copy of this spreadsheet, please contact the TCEQ Project Manager and a copy will be sent to you via regular mail, email or facsimile. Please be sure to include a current mailing address, email address or facsimile telephone number with your request.

As the TCEQ Project Manager for the Site, my contact information is:

Carol Boucher, P.G.
State Lead Remediation Section
Remediation Division
MC-136
Texas Commission on Environmental Quality
P.O. Box 13087
Austin, Texas 78711-3087
Facsimile: (512) 239-2303
Email: cboucher@tceq.state.tx.us

Correspondence should be sent to my attention using mail code MC-136 at the address listed above and **must include the following assigned reference number specified in this letter: SUP0670016**. If you have any questions, please do not hesitate to contact me by telephone at (512) 239-2501 or email at cboucher@tceq.state.tx.us.

Sincerely,

Carol Boucher, P.G., Project Manager
State Lead Section
Remediation Division
Texas Commission on Environmental Quality

CB/sr

Enclosure

VODA_AR_00033062

Buddy Garcia, *Chairman*
Larry R. Soward, *Commissioner*
Bryan W. Shaw, Ph.D., *Commissioner*
Mark R. Vickery, P.G., *Executive Director*



# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

*Protecting Texas by Reducing and Preventing Pollution*

December 12, 2008

BAXTER OIL SERVICE LTD
MR SAM BAXTER, PRESIDENT & REGISTERED AGENT
4828 N SHEPPARD
HOUSTON, TX 77018-2216

Re:    Voda Petroleum, Inc., Proposed State Superfund Site, Clarksville City, Gregg County, Texas, Confirmation of Sixty (60) Day Good Faith Offer Period to Conduct Remedial Design/Remedial Action (RD/RA)

Dear Sir or Madam:

On October 23, 2008, the Texas Commission on Environmental Quality (TCEQ) conducted a public meeting to present the proposed remedial actions for the Voda Petroleum, Inc., Proposed State Superfund Site (Site). A TCEQ letter dated September 12, 2008, was sent to notify all identified potentially responsible parties (PRPs) for the Site about a public meeting, to provide notice of the date of the statuary Good Faith Offer period, and to provide a copy of the Proposed Remedial Action Document (PRAD), which described the proposed remedial alternatives available for the site.

The public comment period for the proposed remedial action ended on October 23, 2008. The TCEQ has reviewed and considered all public comments, a summary of which is enclosed, and determined that no modification to the proposed remedial alternatives is needed. Accordingly, the TCEQ has selected excavation with offsite disposal for the contaminated soil and enhanced bioremediation using reactive biobarriers for the contaminated groundwater as the final remedial actions for the Site.

This letter serves to confirm the dates for the Good Faith Offer period as established in the TCEQ's September 12, 2008, letter. As described in that letter, any Good Faith Offer must be received in writing by the TCEQ's Project Manager no later than 5:00 p.m. on December 22, 2008. However, a request to extend the Good Faith Offer period has been received and granted by the TCEQ. Therefore, any Good Faith Offer must be received in writing by the TCEQ's Project Manager no later than 5:00 p.m. on February 20, 2009.

According to Section 361.187 of the Texas Health and Safety Code (Code), PRPs have sixty (60) days following the public meeting on the proposed remedy to respond in writing to the TCEQ with a Good Faith Offer to fully fund or conduct the proposed remedial actions at the Site. A Good Faith Offer is defined at Section 335.342(5) of 30 Texas Administrative Code. If a Good Faith Offer is made by some or all of the potentially responsible parties before the extended deadline of February 20, 2009, those parties have up to an additional sixty (60) days to negotiate an Agreed Administrative Order, pursuant to Section 361.188 of the Code, to fully fund/perform the selected remedial actions. As part of the Agreed Administrative Order, the potentially responsible parties must also reimburse the TCEQ's past expenditures for the Site.

P.O. Box 13087 • Austin, Texas 78711-3087 • 512-239-1000 • Internet address: www.tceq.state.tx.us
printed on recycled paper

VODA_AR_00033063

BAXTER OIL SERVICE LTD
Page 2
December 12, 2008


If a Good Faith Offer is not received within the specified time period, the TCEQ may complete the remedial actions utilizing state funds and pursue cost recovery actions against responsible parties to recover all response costs pursuant to Section 361.197 for the Code.

The TCEQ has prepared an updated PRP contact information spreadsheet. If you would like a copy of this spreadsheet, please contact the TCEQ Project Manager and a copy will be sent to you via regular mail, email or facsimile. Please be sure to include a current mailing address, email address or facsimile telephone number with your request.

As the TCEQ Project Manager for the Site, my contact information is:

Carol Boucher, P.G.
State Lead Remediation Section
Remediation Division
MC-136
Texas Commission on Environmental Quality
P.O. Box 13087
Austin, Texas 78711-3087
Facsimile: (512) 239-2303
Email: cboucher@tceq.state.tx.us

Correspondence should be sent to my attention using mail code MC-136 at the address listed above and **must include the following assigned reference number specified in this letter: SUP0670016**. If you have any questions, please do not hesitate to contact me by telephone at (512) 239-2501 or email at cboucher@tceq.state.tx.us.

Sincerely,

Carol Boucher, P.G., Project Manager
State Lead Section
Remediation Division
Texas Commission on Environmental Quality


CB/sr

Enclosure

VODA_AR_00033064